COPY

Ronald L. Richman, SBN 139189
C. Todd Norris, SBN 181337
Bullivant Houser Bailey PC
601 California Street, Suite 1800
San Francisco, California 94108
Telephone: 415.352.2700
Facsimile: 415.352.2701
E-Mail: ron.richman@bullivant.com

Attorneys for Plaintiffs Executive Security
Management, Inc. d/b/a the APEX Group and
Contemporary Services Corporation

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY _____
2010 MAR 10  PM 12: 02

FILED

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXECUTIVE SECURITY MANAGEMENT, INC., a California corporation, d/b/a The APEX Group and CONTEMPORARY SERVICES CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>JACK DAHL, an individual, JEANETTE JOHNSON, in her individual capacity and as successor in interest to Jack Dahl, POPULOUS HOLDINGS, INC., a Delaware corporation, formerly known as HOK Sport Venue Event, HOK Group, Inc., a Delaware corporation,<br><br>Defendants. | Case No.: CV-09-9273-CAS-RCx<br><br>**SECOND AMENDED COMPLAINT FOR**<br><br>(1) **BREACH OF FIDUCIARY DUTY**<br><br>(2) **CONVERSION**<br><br>(3) **INTENTIONAL INTERFERENCE WITH CONTRACT**<br><br>(4) **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE DEFENDANT DAHL/JOHNSON**<br><br>(5) **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE – DEFENDANT POPULOUS/HOK GROUP, INC.**<br><br>(6) **VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. §1030)**<br><br>(7) **INTERCEPTION OF COMMUNICATIONS (18 U.S.C. §2520)**<br><br>(8) **UNLAWFUL ACCESS TO STORED COMMUNICATIONS** |

1

2

3

4

5

**(18 U.S.C. §2707)**

**(9) UNFAIR COMPETITION, CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 ET SEQ.**

**(10) SUCCESSOR LIABILITY**

6

## INTRODUCTION AND SUMMARY OF THE COMPLAINT

7    1.    This litigation involves two former employees of Plaintiffs, Jack Dahl ("Dahl"), deceased, and Jeanette Johnson ("Johnson"), who are husband and wife, and who, over the course of their employment, engaged in a campaign to discredit Plaintiffs to its clients and employees, interfered with Plaintiffs' relationship with its clients and employees, stole Plaintiffs' confidential and proprietary information and property, erased Plaintiffs' data and other information from their computer systems, and illegally intercepted confidential e-mail communications, all in an attempt to enrich themselves and to secure the business of Plaintiffs' clients for their own purpose of setting up a competing business. As a result of this misconduct, Dahl and Johnson breached their fiduciary and contractual duties to Plaintiffs, interfered with Plaintiffs' existing and prospective economic relationships, and violated the Computer Fraud and Abuse Act. Further, this litigation involves Jack Dahl and Jeanette Johnson taking confidential and proprietary information belonging to Plaintiffs, providing the same to defendants Populous Holdings, Inc. (formerly doing business as HOK Sport Venue Event) and HOK Group, Inc., without the knowledge and consent of Plaintiffs, and defendants Populous Holdings, Inc. and HOK Group, Inc. using this confidential and proprietary information to compete directly with plaintiffs' competitors and to take business away from plaintiffs including the NFL Super Bowl, PGA tournaments and the Fiesta Bowl, among other major sporting events.

## IDENTIFICATION OF THE PARTIES

2.    Plaintiff Executive Security Management, Inc. is a California

–2–

1   corporation doing business as The APEX Group ("Apex"), with its principal place
2   of business located at 17101 Superior Street, Northridge, California 91325.

3       3.      Plaintiff Contemporary Services Corporation is a California
4   corporation with its principal place of business located at 17101 Superior Street,
5   Northridge, California 91325.

6       4.      Plaintiffs are informed and believe, and on the basis of such
7   information and belief allege, that Defendant Jack Dahl ("Dahl"), deceased, at all
8   relevant times, was a resident of Los Angeles County, California. Dahl was
9   employed by Apex in Los Angeles County, and the substantial bulk of all of the
10  actions that underlie this Complaint took place in Los Angeles County.

11      5.      Plaintiffs are informed and believe, and on the basis of such
12  information and belief allege, that Defendant Jeanette Johnson ("Johnson") is a
13  resident of Los Angeles County, California. Johnson was employed by a sister
14  corporation of Apex, Contemporary Services Corporation ("CSC"), in Los
15  Angeles County, but did work for Apex in that capacity. The substantial bulk of
16  all of the actions that underlie this Complaint took place in Los Angeles County.
17  Johnson and Dahl, at all relevant times, were married to each other.

18      6.      Plaintiffs are informed and believe, and on the basis of such
19  information and belief allege, that Defendant Jack Dahl's estate was not
20  administered upon his death, but instead, all of his separate property and his
21  community property passed by law to his spouse Jeanette Johnson and/or to DOES
22  11 through 20.  As such, Jeanette Johnson and DOES 11 through 20 are the
23  successors in interest to Jack Dahl.  Accordingly, all claims alleged herein against
24  Defendant Jack Dahl are also hereby alleged against Defendant Jeanette Johnson
25  and DOES 11 through 20 as successors in interest to Jack Dahl.

26      7.      Plaintiffs are informed and believe, and on the basis of such
27  information and belief allege, that Defendant Populous Holdings, Inc.
28  ("Populous") is a Delaware corporation, (formerly known as HOK Sport Venue

Event) and transacting business in the State of California.  Plaintiffs further are informed and believe, and on the basis of such information and belief, allege that at all relevant times, HOK Sport Venue Event was a subsidiary of its parent corporation, HOK Group, Inc.

8.     Plaintiffs are informed and believe, and on the basis of such information and belief allege, that at all relevant times herein, Defendant HOK Group, Inc. was a Delaware corporation, transacting business in the State of California, and was the parent corporation of HOK Sport Venue Event, now doing business as Populous.

9.     Plaintiffs are informed and believe, and on the basis of such information and belief, allege, that at all relevant times, that HOK Sport Venue Event, now doing business as Populous Holdings, Inc., was the alter-ego of its parent, HOK Group, Inc., in that there was a unity of interest and ownership between HOK Sport Venue Event and its parent corporation, HOK Group, Inc., such that there did not exist a separateness between them, and at all relevant times, HOK Group, Inc. treated HOK Sport Venue Event as if it were not a separate entity, but instead, as a mere agency or instrumentality of HOK Group, Inc., and injustice and an inequitable result will occur if the corporate veil is not pierced as all of the actions of defendants defendants HOK Group, Inc. and HOK Sport Venue Event, now doing business as Populous, were as one.

## FACTUAL BACKGROUND

### *Defendants' Interference with Plaintiffs' Clients and Employees*

10.     Apex provides executive security, event security, and event accreditation services at concerts and sporting, events.

11.     CSC provides event staffing, security and crowd management for concerts and sporting events.

12.     At all times relevant to this litigation, Damon Zumwalt ("Zumwalt") was the Chairman and Chief Executive Officer of Apex and CSC.

13.     At all times relevant to this litigation, and until his resignation from Apex, Dahl was employed by Apex, most recently as Vice President and Secretary, and was responsible for the accreditation division of Apex. Dahl was also a member of Apex's Board of Directors. Dahl's employment with Apex was suspended pending investigation of his wrongdoing on February 4, 2008. Dahl resigned from his position on the Board of Directors and from his position as an employee of Apex on February 11, 2008. After his resignation, Dahl became employed with HOK Sport Venue Event now doing business as Populous.

14.     At all times relevant to this litigation, and until her resignation from CSC, Johnson was employed by CSC, most recently as Director of Marketing and Public Relations. On February 4, 2008, Johnson was suspended from her employment with CSC pending CSC's investigation of her wrongdoing. Johnson resigned her position the same day. After her resignation, Johnson became employed with HOK Sport Venue Event now doing business as Populous.

15.     In the course of their employment, Dahl and Johnson had significant contact with clients of Apex, including, but not limited to, the Professional Golf Association ("PGA") and the National Football League ("NFL").

16.     On or about January 27, 2008, while providing credentialing services to the NFL for the Super Bowl on behalf of Plaintiff Apex, Defendants Dahl and Johnson made numerous misrepresentations to the NFL concerning Zumwalt and the ability of Plaintiff Apex to provide services to the NFL. Defendants made these representations with the express intent of continuing to interfere with Plaintiff's business relationship with the NFL in order to secure the NFL's business for themselves or for another Defendant.

17.     At approximately the same time, Zumwalt attempted to enter Plaintiff Apex's credentialing office at the Super Bowl in Phoenix, Arizona. Dahl and Johnson, and the Defendants acting in concert with them, prevented Zumwalt from so doing.

Second Amended Complaint

18. After his employment with Plaintiff Apex was terminated, Plaintiff Apex requested that Dahl return information relating to the NCAA that Dahl had wrongly taken from Plaintiff. Dahl refused to do so.

19. On or about February 22, 2008, Defendants Dahl and Johnson, while in the employ of HOK Sport Venue Event and within the scope of their employment, contacted the PGA and made numerous misrepresentations concerning Zumwalt and Plaintiff Apex, including false statements concerning Zumwalt's mental capacity, his control of his faculties, and the ability of Zumwalt and Plaintiff Apex to provide credentialing and other services to the PGA. Defendants Dahl and Johnson made these representations with the express intent of interfering with Plaintiff Apex's business relationship with the PGA in order to secure the PGA's business for themselves or for another Defendant. In addition. On or about February 19 and 20, 2008, while in the employ of HOK Sport Venue Event and within the scope of their employment, on HOK Event, Inc. letterhead and using HOK e-mail, defendants Dahl and Johnson contacted the PGA regarding the 90th PGA Championship, attempting to lure the PGA away from Plaintiffs even though Plaintiffs had already signed a credentialing contract with the PGA for the 90th PGA Championship. Plaintiffs subsequently lost the PGA contracts.

20. On or about March 10, 2008, while in the employ of HOK Sport Venue Event and within the scope of their employment, Defendants Dahl and Johnson provided to HOK Sport Venue Event a copy of the NFL Super Bowl contract between the NFL and Apex that was awarded to Plaintiffs, which contained confidential and proprietary information including staffing and compensation, among other information, that HOK Sport Venue Event was able to wrongfully use in its successful attempt to procure the credentialing services for the NFL Super Bowl for 2009.

21. In approximately early February 2008, Dahl made numerous

misrepresentations to an associate of Ron Burkle ("Burkle"), who, at the time, had a valuable account with Plaintiff Apex. These misrepresentations concerned Zumwalt and Apex, including false statements concerning Zumwalt's mental capacity, his control of his faculties, and the ability of Zumwalt and Apex to provide security and other services to Burkle. Dahl made these representations with the express intent of interfering with Plaintiff Apex's business relationship with Burkle and in order to secure Burkle's business for himself or for another Defendant. Apex ultimately lost this business in approximately May, 2008 as a result of these misrepresentations.

22.   Plaintiffs are informed and believe, and on that basis allege, that Defendants Dahl and Johnson have made similar communications and misrepresentations to other current clients of Plaintiff Apex, including, without limitation, the PGA.  Defendants Dahl and Johnson made these representations with the express intent of interfering with Plaintiff Apex's business relationship with these clients in order to secure these clients for themselves or for another Defendant.  Plaintiffs are currently investigating the full extent of Defendants' interference with Plaintiff Apex's business, and reserves the right to amend its Second Amended Complaint to include those other client relationships with which Defendants interfered.

23.   Plaintiffs are informed and believe, and on that basis allege, that Defendants Dahl and Johnson also managed Plaintiff Apex in a manner to benefit themselves and facilitate their setting up a competing business and to interfere with client relationships. These actions included ensuring that other employees of Plaintiff Apex (and its parent and affiliates) were prevented from being involved in credentialing services, such that only Dahl and Johnson would have sufficient knowledge to run the business. Defendants Dahl and Johnson did this with the express intent of interfering with Plaintiff Apex's business relationships and preventing Plaintiff Apex from fully exploiting these relationships.

1   24. Plaintiffs are informed and believe, and on that basis allege, that

2 Defendants Dahl and Johnson also solicited other current employees of Plaintiff

3 Apex and its related entities while still employed by Plaintiffs, with the intention

4 of setting up a competing business and damaging Plaintiffs' interests in exploiting

5 its business and contractual relationships.

6   **_Dahl and Johnson's Misappropriation and Conversion of Plaintiff Apex's_**

7 **_Property and Their Deleting of Computer Files_**

8   25. While Defendants Dahl and Johnson were providing credentialing

9 services for the 2007 and 2008 Super Bowls on behalf of Plaintiff Apex, Dahl and

10 Johnson withdrew substantial sums from Plaintiff Apex's corporate account to use

11 for their own benefit and not for the benefit of Plaintiff Apex. For example,

12 Defendants Dahl and Johnson offered to pay and did pay certain employees large

13 sums of cash, which were not authorized by Plaintiff Apex or by Zumwalt and

14 which were not owed to these employees per their respective employment

15 agreements.  Plaintiffs are informed and believe, and on that basis allege, that

16 Defendants Dahl and Johnson converted a portion of this money for their own

17 purposes.

18   26. On or about the time that Defendants Dahl and Johnson were

19 suspended from their duties at Apex and CSC and subsequently resigned their

20 positions, Defendants Dahl and Johnson erased the files on the hard drive of the

21 computer which was provided to Dahl by Plaintiff Apex in connection with his

22 employment at Plaintiffs (the "Computer"). These files contained confidential and

23 proprietary information that belonged to Plaintiffs.

24   27. On or about the time that Defendants Dahl and Johnson were

25 suspended from their duties at Apex and CSC and subsequently resigned their

26 positions, Dahl and Johnson removed proprietary and confidential files, materials,

27 and other documents relating to other of Plaintiff Apex's contracts and accounts.

28   28.  Plaintiffs are informed and believe, and based upon such information

1   and belief allege, that at some point prior to their suspension and termination from
2   Apex and CSC, Dahl and Johnson misappropriated a back-up computer hard drive
3   attached to Zumwalt's computer. This hard drive was the property of Plaintiff
4   Apex and contained confidential and proprietary information belonging to
5   Plaintiff Apex.

6        29.    Plaintiffs are informed and believe, and based upon such information
7   and belief allege, that Defendants Dahl and Johnson provided to Defendants HOK
8   Group, Inc. and HOK Sport Venue Event confidential and proprietary information
9   belonging to Apex including, but not limited to, information and documentation
10   regarding credentialing for the NFL Super Bowl, PGA, NCAA, college bowl
11   games and Breeder's Cup, and that Defendants HOK Group, Inc. and HOK Sport
12   Venue Event used this confidential and proprietary information to solicit and
13   eventually take away contracts previously awarded to Plaintiffs.

14   ***Dahl and Johnson Join Populous fka HOK Sport Venue Event***

15        30.    One of Plaintiff Apex's competitors was HOK Sport Venue Event
16   now doing business as Populous. Plaintiffs are informed and believe, and on that
17   basis allege, that Populous is a sports architecture firm that provides event
18   management and accreditation services at civic, entertainment and sporting events
19   that was in its start up, regarding event management and accreditation, when
20   Defendants Dahl and Johnson joined Populous.

21        31.    Upon information and belief, and on that basis allege, Populous
22   separated from its parent company, HOK Group, Inc. in 2008. In August 2008,
23   Populous Holdings, Inc. was incorporated and a buyout deal was finalized in
24   December 2008. HOK Sport Venue Event was rebranded as Populous.

25        32.    Starting on or about February 11, 2008, Dahl and Johnson were
26   employed by HOK Sport Venue Event now doing business as Defendant
27   Populous. When Dahl left Apex's employ and when Johnson left CSC's employ,
28   they immediately joined HOK Sport Venue Event now doing business as

–9–

Second Amended Complaint

1   Populous, bringing Plaintiffs' confidential and proprietary files and materials with

2   them.

3        33.    Upon information and belief, and on that basis allege, at all relevant

4   times, Defendants HOK Group, Inc., and HOK Sport Venue Event, now doing

5   business as Populous, are and have been attempting to wrongfully compete against

6   Plaintiffs.  However, instead of competing fairly and lawfully, Defendants HOK

7   Group, Inc. and Populous used Plaintiffs' confidential and proprietary information

8   and data that Populous knew, or should have known, that Dahl and Johnson

9   misappropriated while employed by Plaintiffs and then provided to Defendants

10   HOK Group, Inc. and Populous.

11        34.    In the course of his employment and at all relevant times herein, Dahl

12   had significant contacts with clients of Plaintiffs, including the PGA and NFL and

13   thus, was familiar with the manner by which Plaintiff Apex formulated its

14   respective bids and the methods by which it carried out its obligations under its

15   contracts with the PGA and NFL.

16        35.    By using Plaintiffs' confidential and proprietary information,

17   including confidential information about the PGA and NFL relationships, HOK

18   Sport Venue Event, now doing business as Populous, procured contracts with the

19   NFL, who previously contracted with Apex and interfered with Apex's business

20   relationship with PGA, causing Apex to lose its long standing contracts with the

21   PGA.

22        36.    Upon information and belief, and on that basis allege, Defendants

23   HOK Group, Inc. and Populous have knowledge of how Plaintiffs' confidential

24   and proprietary material was obtained and has accepted, and continues to accept,

25   the benefits of Dahl and Johnson's acts, and thus further ratifies them.

26        37.    The PGA and NFL were Plaintiff Apex's most important

27   credentialing business clients and Plaintiff Apex had reasonable expectations that

28   the PGA and NFL would remain Plaintiff's clients.

1    38.    Defendants HOK Group, Inc. and Populous have unlawfully and

2  improperly interfered with Plaintiff Apex's business relationship and/or business

3  expectancy with the PGA and NFL by attempting to lure the PGA away after

4  Plaintiffs had a signed contract with the PGA, and by using confidential and

5  proprietary information to obtain lucrative contracts which in 2008 and years

6  prior, were awarded to Plaintiffs.

7    39.    Defendants HOK Group, Inc. and Populous have accepted the

8  benefits of Dahl and Johnson's misappropriation of Plaintiffs' confidential and

9  proprietary material, and has used the materials to unfairly and unlawfully

10  compete with Plaintiff s in furtherance of their  operations and business

11  development.

12    40.    The misappropriated material provides Defendants HOK Group, Inc.

13  and Populous with a competitive advantage it otherwise would not have.  Thus, it

14  is inevitable that Defendants HOK Group, Inc. and Populous will continue to use

15  Plaintiffs' confidential and proprietary material to procure other contracts on

16  behalf of Populous.

17    ***Dahl and Johnson's Wrongful Interception of Plaintiff's Emails***

18    41.    During Super Bowl 2008, Plaintiff Apex, Zumwalt, and James

19  Service ("Service"), General Counsel for Plaintiffs, and James Granger

20  ("Granger") became aware of Defendants Dahl and Johnson's wrongful activities.

21  It was decided that Granger would visit the Super Bowl site in Phoenix to

22  interview Plaintiffs' employees regarding this wrongdoing.

23    42.    In anticipation of this visit, Service prepared a questionnaire (the

24  "Questionnaire") for Granger to use when interviewing employees. Zumwalt,

25  Granger, Service, and Robert Brockway ("Brockway"), an employee of Plaintiff

26  Apex, exchanged drafts of the Questionnaire via e-mail. Neither the final version

27  nor any drafts were exchanged with, sent, or given to Dahl or Johnson.

28    43.    However, prior to the time that Defendants Johnson and Dahl could

Second Amended Complaint

have become aware of the Questionnaire through legitimate means, Zumwalt was informed that Dahl had confronted two of Plaintiff Apex's employees and had stated to those employees that they were "traitors" and waived a printout of the Questionnaire at them.

44.    Moreover, approximately one week later, Service spoke with Dahl. Dahl informed Service that he (Dahl) had already seen a copy of the Questionnaire.

45.    At all relevant times, Defendants Dahl and Johnson had been responsible for setting up certain Plaintiff Apex email accounts, including that of Service and Zumwalt.

46.    Plaintiffs are informed and believe, and on that basis allege, that Defendants Dahl and Johnson improperly and secretly retained, without authorization, access to Zumwalt and Service's email accounts and also installed a "filter" or similar device or program to enable them to intercept, without authorization, emails being sent to and from Zumwalt and Service's email accounts, including, but not limited to, drafts and final version of the Questionnaire exchanged between Zumwalt, Service, Granger, and others.

## FIRST CAUSE OF ACTION

**(By Plaintiff Apex Against Defendant Dahl for Breach of Fiduciary Duty and Against Defendant Jeanette Johnson as successor in interest to Defendant Jack Dahl)**

47.    Plaintiffs incorporate in this Cause of Action the allegations of Paragraphs 1 through 46, above.

48.    As Vice President and Secretary and member of Plaintiff Apex's Board of Directors, Dahl owed a fiduciary duty to Apex to act with the utmost good faith and in the best interest of Apex.

49.    During the time that Dahl owed a fiduciary obligation to Plaintiff Apex, Dahl breached his fiduciary duty by intentionally interfering with Plaintiff's

1   ongoing business relationships. Among other things, Dahl: damaged Plaintiff's
2   existing relationships with its clients, including inserting himself as a "crucial
3   party" in NFL credentialing contracts and eventually adding Johnson as a crucial
4   party; solicited Plaintiff's clients for his own benefit; and solicited Plaintiff's
5   existing employees to go to work for Dahl in a different business. All of Dahl's
6   actions were in an attempt to establish a rival business or to otherwise benefit
7   himself and Johnson.

8      50.    Additionally, Dahl used confidential and proprietary business
9   information that he acquired in the course of his employment with Plaintiff Apex
10  in an attempt to establish a rival business and otherwise damage Plaintiff.

11     51.    Dahl also withdrew money from Plaintiff Apex's corporate account
12  and used such funds to pay unauthorized bonuses and sums of money to
13  employees in an attempt to gain their trust, confidence and services for his own
14  benefit and to the detriment of Plaintiff Apex.  Plaintiff Apex is informed and
15  believes, and based on such information and belief alleges, that Dahl also
16  converted Plaintiff Apex's money for his personal use.

17     52.    As a result of Dahl's breach of his fiduciary duty to Plaintiff Apex,
18  Plaintiff has been damaged in an amount currently unknown, but believed to
19  exceed $1,000,000.

20     53.    Dahl's acts were intentional, willful, and malicious. Plaintiff is thus
21  entitled to exemplary damages.

22                    **SECOND CAUSE OF ACTION**

23           **(By Plaintiffs Against Defendants for Conversion)**

24     54.    Plaintiffs incorporate in this Cause of Action the allegations of
25  paragraphs 1 through 53, above.

26     55.    Plaintiffs are informed and believe, and on that basis allege, in late
27  January or early February, 2008, prior to Defendants Dahl and Johnson leaving the
28  employ of Plaintiffs and becoming employed with HOK Sport Venue Event, now

Second Amended Complaint

1  doing business as Populous, Defendants Dahl and Johnson wrongfully exercised

2  control over Plaintiffs' property by removing Plaintiffs' documents, data, files,

3  materials, money, back-up hard drive, and other property, and by erasing

4  Plaintiffs' data files, programs, and systems from Plaintiffs' Computer, without

5  Plaintiffs' authorization or consent, and converted the same to their own use.

6      56.    Plaintiffs never consented to, authorized, or had knowledge of

7  Defendants Dahl and Johnson's removal of Plaintiffs' documents, data, files,

8  materials, money, back-up hard drive, and other property, or to Defendants'

9  erasing of information from Plaintiffs' Computer, until after Dahl and Johnson left

10 Apex's and CSC's employ, respectively.  At all times relevant, Plaintiffs were,

11 and still are, the owners of this property and are still entitled to exclusive

12 ownership over this property.  Defendants Dahl and Johnson have refused to

13 return the confidential and proprietary documentation and information and other

14 property.

15     57.    As a result of Defendants Dahl and Johnson's wrongful exercise of

16 control over Plaintiffs' property, Plaintiffs have been damaged in an amount yet to

17 be determined, but believed to be in excess of $1,000,000.

18     58.    Plaintiffs are further informed and believe, and on that basis allege,

19 that after Defendants Dahl and Johnson became employed with HOK Sport Venue

20 Event in February, 2008 and within the scope of their employment, Defendants

21 Dahl and Johnson wrongfully transferred and provided to Defendants HOK

22 Group, Inc. and HOK Sport Venue Event, now doing business as Populous,

23 Plaintiffs' documents, data, files, materials, money, back-up hard drive, and other

24 property Defendants Dahl and Johnson wrongfully removed from Plaintiffs and

25 erased from Plaintiffs' computers.  After Defendants Dahl and Johnson became

26 employed with HOK Sport Venue Event, Defendants HOK Group, Inc. and HOK

27 Sport Venue Event, now doing business as Populous, without the knowledge,

28 consent or authorization from Plaintiffs, assumed control and ownership of the

1  confidential and proprietary information and data that Defendants Dahl and

2  Johnson wrongfully took from Plaintiffs, and converted it to their own use.  At the

3  time that Defendants HOK Group, Inc. and HOK Sport Venue Event knowingly

4  assumed control and ownership of the confidential and proprietary information

5  belonging to Plaintiffs, Defendants Dahl and Johnson were employed with HOK

6  Sport Venue Event and acting within the scope of their employment with HOK

7  Sport Venue Event.

8      59.    At all times relevant, Plaintiffs were, and still are, the owners of this

9  property and are still entitled to exclusive ownership over this property.

10  Defendants HOK Sport Venue Event and HOK Group, Inc. have refused to return

11  the confidential and proprietary documentation and information and other

12  property.

13      60.    As a result of Defendants HOK Group, Inc. and HOK Sport Venue

14  Event, now doing business as Populous, wrongful exercise of control over

15  Plaintiffs' property, Plaintiffs have been damaged in an amount yet to be

16  determined, but believed to be in excess of $1,000,000.

17      61.    Defendants' acts were intentional, willful, and malicious. Plaintiffs

18  are thus entitled to exemplary damages.

19      62.    Monetary damages alone would not afford adequate or complete

20  relief to Plaintiff.

21      63.    To the extent that Defendants, including Populous and HOK Group,

22  Inc. continue to possess Plaintiffs' documents, data, files, materials, monies, and

23  other property, Plaintiffs seek injunctive relief requiring Defendants, and each of

24  them, and their respective agents, attorneys, representatives, assigns, and all those

25  acting in concert with them, to return to Plaintiffs all documents, data, files,

26  materials, monies, and other property that were wrongfully taken from Plaintiffs'

27  custody, control, or possession.

28

Second Amended Complaint

## THIRD CAUSE OF ACTION

**(By Plaintiffs Against Defendants for Intentional Interference with Contract)**

64.     Plaintiffs incorporate in this Cause of Action the allegations of paragraphs 1 through 63, above.

65.     Plaintiff Apex had valid and existing contracts with numerous third-party clients, including, but not limited to, the PGA and the NFL.

66.     Because of their relationships with Plaintiffs, Defendants Dahl and Johnson knew of these existing contractual relationships with third parties.  In an attempt to damage and otherwise disrupt Plaintiffs' business relationships, Dahl and Johnson, while employed by Apex and CSC, intentionally disparaged Zumwalt and Plaintiff to these third parties and otherwise interfered with Plaintiff Apex's contractual relationship with these third parties.

67.     Moreover, by misappropriating Plaintiff Apex's and its clients' documents, data, materials, and other property, and refusing to return such property, and by erasing Plaintiff Apex's computer files, data, and systems, Defendants Dahl and Johnson, and each of them,  interfered with Plaintiff Apex's ability to perform under its existing contracts.

68.     As a result of Defendants Dahl and Johnson's intentional acts, actual interference with and disruption of Plaintiff Apex's contractual relationships, Plaintiffs have incurred substantial damage.

69.     Plaintiff Apex seeks damages for Defendants Dahl and Johnson's wrongful acts in an amount unknown at this time but believed to exceed $1,000,000.

70.     Defendants' acts were intentional, willful, and malicious. Plaintiff is thus entitled to exemplary damages.

71.     In addition, and as detailed in paragraphs 58 and 59, above, after Defendants Dahl and Johnson became employed with HOK Sport Venue Event in

Second Amended Complaint

1  February, 2008, Defendants HOK Group, Inc. and HOK Sport Venue Event, now

2  doing business as Populous, without the knowledge, consent or authorization from

3  Plaintiffs, assumed control and ownership of the confidential and proprietary

4  information and data that Defendants Dahl and Johnson wrongfully took from

5  Plaintiffs, and converted it to their own use. At the time that Defendants HOK

6  Group, Inc. and HOK Sport Venue event assumed control and ownership of the

7  confidential and proprietary information, Defendants Dahl and Johnson were

8  employed with HOK Sport Venue Event and acting within the scope of their

9  employment with HOK Sport Venue Event. By converting this confidential and

10  proprietary information and documentation for their own use, Defendants HOK

11  Group, Inc. and HOK Sport Venue Event interfered with Plaintiffs' existing

12  contracts with the PGA and NFL.

13      72.    Further, on or about February 22, 2008, Defendants Dahl and

14  Johnson, while in the employ of HOK Sport Venue Event and within the scope of

15  their employment, contacted the PGA and made numerous misrepresentations

16  concerning Zumwalt and Plaintiff Apex, including false statements concerning

17  Zumwalt's mental capacity, his control of his faculties, and the ability of Zumwalt

18  and Plaintiff Apex to provide credentialing and other services to the PGA.

19  Defendants Dahl and Johnson made these representations with the express intent

20  of interfering with Plaintiff Apex's business relationship with the PGA in order to

21  secure the PGA's business for themselves or for HOK Sport Venue Event.

22      73.    On or about February 19 and 20, 2008, while in the employ of HOK

23  Sport Venue Event and within the scope of their employment, on HOK Event, Inc.

24  letterhead and using HOK e-mail, defendants Dahl and Johnson contacted the

25  PGA regarding the 90th PGA Championship, attempting to lure the PGA away

26  from Plaintiffs even though Plaintiffs had already signed a contract with the PGA

27  for the 90th PGA Championship. Plaintiffs subsequently lost the PGA contracts.

28      74.    On or about March 10, 2008, while employed at HOK Sport Venue

1  Event and within the scope of their employment, Defendants Dahl and Johnson

2  provided to HOK Sport Venue Event a copy of the NFL Super Bowl contract

3  between the NFL and Apex that was awarded to Plaintiff Apex, which contained

4  confidential and proprietary information including staffing and compensation,

5  among other information.  Plaintiffs are informed and believe, and on that basis

6  allege, that Defendants HOK Group, Inc. and HOK Sport Venue Event, now doing

7  business as Populous, were able to wrongfully use this confidential and propriety

8  information and documentation in its successful attempt to procure the

9  credentialing services for the NFL Super Bowl for 2009, thereby interfering with

10  the long-standing contractual relationship between Plaintiff Apex and the NFL.

11      75.     As a result of Defendants HOK Group Inc. and Populous' intentional

12  acts, actual interference with and disruption of Plaintiff Apex's contractual

13  relationships, Plaintiffs have incurred substantial damage.

14      76.     Plaintiff Apex seeks damages for Defendants HOK Group, Inc. and

15  Populous' wrongful acts in an amount unknown at this time but believed to

16  exceed $1,000,000.

17      77.     Defendants' acts were intentional, willful, and malicious. Plaintiff is

18  thus entitled to exemplary damages.

19      78.     Monetary damages alone would not afford adequate or complete

20  relief to Plaintiff.  Moreover, by misappropriating Plaintiff's and its clients'

21  documents, data, materials, and other property, and by erasing Plaintiff's computer

22  files, data, and systems, Defendants interfered with Plaintiff's ability to perform

23  under its existing contracts.

24      79.     To the extent that Defendants continue to interfere with Plaintiff's

25  existing contractual relationships, Plaintiff seeks an injunction: (i) prohibiting

26  Defendants, and each of them, and their respective agents, attorneys,

27  representatives, assigns, and all those acting in concert with them, from interfering

28  with said contractual relationships, including, but not limited, to enjoining

Second Amended Complaint

Defendants from making false, disparaging, and/or damaging representations relating to Plaintiff (or any of its agents, affiliates, or parent) to said third parties; and (ii) requiring Defendants, and each of them, and their respective agents, attorneys, representatives, assigns, and all those acting in concert with them to return to Plaintiff all documents, data, materials, and other property that Defendants wrongfully took from Plaintiff and to destroy any copies of such documents, data, materials, and other property.

## FOURTH CAUSE OF ACTION

**(By Plaintiffs Against Defendant Dahl for Intentional Interference with Prospective Economic Advantage and Against Defendant Jeanette Johnson as successor in interest to Defendant Jack Dahl)**

80.    Plaintiffs incorporate in this Cause of Action the allegations of paragraphs 1 through 79.

81.    Dahl was aware of and responsible for entering into agreements with Plaintiff Apex's employees. Based on his relationship with Plaintiff Apex, Dahl knew of Plaintiff's relationships with employees and knew which employees were best qualified to perform certain tasks. Dahl intentionally interfered with Plaintiff Apex's relationships with its employees for the purpose of causing those employees to go to work with Dahl after he left Plaintiff's employment. Among the actions taken by Dahl was his intentional disparagement of Zumwalt and Plaintiff to Plaintiff Apex's employees.

82.    Plaintiff suffered damages as a result of Dahl's intentional and wrongful acts, including his actual interference with and disruption of Plaintiff's relationships.

83.    All of these acts were committed in breach of Dahl's fiduciary duty to Plaintiff.

84.    Plaintiff seeks damages for Dahl's wrongful acts in an amount unknown at this time but believed to exceed $1,000,000.

– 19 –

85.  Dahl's acts were intentional, willful, and malicious. Plaintiff is thus entitled to exemplary damages.

86.  Monetary damages alone would not afford adequate or complete relief to Plaintiff.

87.  To the extent that Dahl continues to interfere with Plaintiff Apex's existing contractual relationships, Plaintiff Apex seeks injunctive relief enjoining Dahl and his respective agents, attorneys, representatives, assigns, and all those acting in concert with them, from interfering with said contractual relationships, from making false, disparaging, and/or damaging representations relating to Plaintiff Apex (or any of its agents, affiliates, or parent) to said third parties.

## FIFTH CAUSE OF ACTION

**(By Plaintiffs Against Defendant Populous and HOK Group, Inc. for Intentional Interference with Prospective Economic Advantage)**

88.  Plaintiffs incorporate in this Cause of Action the allegations of paragraphs 1 through 87, above.

89.  As alleged herein, Plaintiff Apex has and had valid existing business relationships and prospective business interests with, including but not limited to, the PGA and the NFL, and these business relationships had probable future economic benefit or advantage for Plaintiff Apex.

90.  After Defendants Dahl and Johnson became employed with HOK Sport Venue Event in February, 2008, Defendants HOK Group, Inc. and HOK Sport Venue Event, now doing business as Populous, without the knowledge, consent or authorization from Plaintiffs, assumed control and ownership of the confidential and proprietary information and data that Defendants Dahl and Johnson wrongfully took from Plaintiffs, and converted it to their own use.  At the time that Defendants HOK Group, Inc. and HOK Sport Venue event assumed control and ownership of the confidential and proprietary information, Defendants Dahl and Johnson were employed with HOK Sport Venue Event and acting within

1   the scope of their employment with HOK Sport Venue Event.  By converting this

2   confidential and proprietary information and documentation for their own use,

3   Defendants HOK Group, Inc. and HOK Sport Venue Event interfered with

4   Plaintiffs' existing contracts with the PGA and NFL.

5       91.    On or about February 22, 2008, Defendants Dahl and Johnson, while

6   in the employ of HOK Sport Venue Event and within the scope of their

7   employment, contacted the PGA and made numerous misrepresentations

8   concerning Zumwalt and Plaintiff Apex, including false statements concerning

9   Zumwalt's mental capacity, his control of his faculties, and the ability of Zumwalt

10  and Plaintiff Apex to provide credentialing and other services to the PGA.

11  Defendants Dahl and Johnson made these representations with the express intent

12  of interfering with Plaintiff Apex's business relationship with the PGA in order to

13  secure the PGA's business for themselves or for HOK Sport Venue Event.

14      92.    On or about February 19 and 20, 2008, while in the employ of HOK

15  Sport Venue Event and within the scope of their employment, on HOK letterhead

16  and using HOK e-mail, defendants Dahl and Johnson contacted the PGA

17  regarding the 90th PGA Championship, attempting to lure the PGA away from

18  Plaintiffs even though Plaintiffs had already signed a contract with the PGA for

19  the 90th PGA Championship.  Plaintiffs subsequently lost the PGA contracts.

20      93.    On or about March 10, 2008, while employed at HOK Sport Venue

21  Event and within the scope of their employment, Defendants Dahl and Johnson

22  provided to HOK Sport Venue Event a copy of the NFL Super Bowl contract

23  between the NFL and Apex that was awarded to Plaintiff Apex, which contained

24  confidential and proprietary information including staffing and compensation,

25  among other information.  Plaintiffs are informed and believe, and on that basis

26  allege, that Defendants HOK Group, Inc. and HOK Sport Venue Event, now doing

27  business as Populous, were able to wrongfully use this confidential and propriety

28  information and documentation in its successful attempt to procure the

Second Amended Complaint

1  credentialing services for the NFL Super Bowl for 2009, thereby interfering with

2  the long-standing contractual relationship between Plaintiff Apex and the NFL.

3    94. Defendants Populous and HOK Group, Inc. knew about Plaintiff

4  Apex's existing business relationships and prospective expectancies with the PGA

5  and the NFL and of Plaintiff's expectation that the contracts would be renewed or

6  formed.

7    95. Defendants Populous and HOK Group, Inc. intentionally engaged in

8  unlawful conduct to interfere with and disrupt Plaintiff Apex's business

9  relationships and business expectancies with the PGA and the NFL, including,

10  upon information and belief, using Plaintiff Apex's confidential and proprietary

11  material in its business operations.

12    96. As a result of Defendants Populous and HOK Group, Inc.'s

13  interference, Plaintiff Apex's business relationships with the PGA and the NFL

14  have been disrupted. Plaintiffs lost lucrative contracts with the NFL and PGA.

15  Such interference was accomplished for an improper purpose and through

16  improper means.

17    97. As a direct and proximate result of Defendant Populous' unlawful

18  conduct, Plaintiff has suffered damages and has lost the full economic benefit and

19  advantage reasonably expected from these relationships.

20    98. Defendants Populous and HOK Group, Inc. has caused, is causing,

21  and continues to cause substantial damage to Plaintiff in an amount unknown at

22  this time but believed to exceed $1,000,000. Plaintiff Apex is entitled to,

23  therefore, among other remedies, actual damages for the loss in value of its

24  confidential and proprietary information, loss of its competitive advantage, and the

25  loss of its clients and profits.

26    99. Defendants Populous and HOK Group, Inc.'s acts were intentional,

27  willful, and malicious and were orchestrated with the intent to damage Plaintiff.

28  Plaintiff Apex is thus entitled to exemplary damages.

1   100.   Monetary damages alone would not afford adequate or complete
2   relief to Plaintiff.

3   101.   To the extent that Populous and HOK Group, Inc. continue to
4   interfere with Plaintiff Apex's existing business relationships and prospective
5   business economic interests, Plaintiff seeks injunctive relief enjoining Populous,
6   HOK Group, Inc. and its respective agents, attorneys, representatives, assigns, and
7   all those acting in concert with them, from interfering with said business
8   relationships, including, but not limited, to enjoining Populous and HOK Group,
9   Inc. from using or disclosing Plaintiff's confidential and proprietary information
10  to said third parties.

11  ## SIXTH CAUSE OF ACTION

12  **(By Plaintiffs Against Defendants Dahl and Johnson for Violation of the
13  Computer Fraud and Abuse Act (18 U.S.C. § 1030))**

14  102.   Plaintiffs incorporate in this Cause of Action the allegations of
15  paragraphs 1 through 101, above.

16  103.   Defendants Dahl and Johnson had access to the Computer, within the
17  meaning of 18 USC §1030(a)(5)(A)(i), as part of their employment with or work
18  on behalf of Plaintiffs and CSC. The Computer was, at all relevant times, the
19  property of Plaintiffs.

20  104.   Dahl was only authorized to use the Computer in connection with his
21  work for Plaintiff Apex. Johnson was only authorized to use the Computer in
22  connection with her work for Plaintiff CSC and, when necessary, Plaintiff Apex.

23  105.   Defendants Dahl and Johnson, without authorization, caused the data
24  on the Computer to be erased, including all data and information Dahl had
25  produced over the course of his employment.

26  106.   Plaintiffs are informed and believes, and on the basis of such
27  information and belief alleges, that Defendants intentionally used an erasure
28  program to delete files from the Computer in order to destroy the Computer's

1   files, including impairing the integrity or availability of data on the Computer.  It
2   is unknown by Plaintiffs whether such erasure program was downloaded from the
3   Internet or copied from a floppy disk (or a floppy disk equivalent, such as a CD)
4   and then inserted into the Computer's disk drive.

5       107.   By utilizing an erasure program on the Computer, Defendants Dahl
6   and Johnson knowingly caused the transmission of a program, information, code,
7   or command, and as a result of such conduct, intentionally caused damage without
8   authorization, to a protected computer within the meaning of 18 USC
9   §1030(a)(5)(A)(i).

10      108.   The data erased by Defendants Dahl and Johnson in the Computer
11  included data that Defendants knew had not been duplicated by Plaintiffs, was not
12  otherwise available to Plaintiffs and which Defendants knew Plaintiffs needed.
13  Moreover, Dahl and Johnson knew the data destroyed in the Computer included
14  work product that was the property of Plaintiffs.

15      109.   Plaintiffs seek damages, in an amount unknown at this time, but in
16  excess of $1,000,000 for Defendants' violation of the Computer Fraud and Abuse
17  Act.

18      110.   Monetary damages alone would not afford adequate or complete
19  relief to Plaintiff.

20      111.   To the extent that Defendants possess copies of the data that was
21  deleted from the Computer, Plaintiffs seeks injunctive relief: (i) requiring
22  Defendant Dahl (through his representative or successor), Johnson, Populous and
23  HOK Group, Inc. to turn over any and all such data that they have in their
24  possession or control: and (ii) prohibiting Dahl, Johnson, Populous and HOK
25  Group, Inc. from using such data for any purpose.

26      112.   Unless restrained, Defendants will use the data taken from the
27  Computer causing great and irreparable injury to Plaintiffs, for which damages
28  would not afford adequate or complete relief.

Second Amended Complaint

## SEVENTH CAUSE OF ACTION

### (By Plaintiffs Against Defendants Dahl and Johnson for Interception of Communications (18 U.S.C. § 2520))

113.   Plaintiffs incorporate in this Cause of Action the allegations of paragraphs 1 through 112, above.

114.   Plaintiffs are informed and believe, and on that basis allege, that Defendants Dahl and Johnson intercepted, caused to be intercepted, or induced some other person to intercept confidential electronic communications between Plaintiffs and its employees and agents, including, but not limited to, Zumwalt, Granger, and Service.

115.   Plaintiffs are informed and believe, and on that basis alleges, that Defendants Dahl and Johnson intentionally disclosed, or endeavored to disclose these intercepted electronic communications, knowing that these communications were obtained through unauthorized interception.

116.   Plaintiffs are informed and believe, and on that basis allege, that Defendants intentionally used or endeavored to use the information contained in these electronic communications, knowing that this information was obtained through unauthorized interception of electronic communications.

117.   Defendants Dahl and Johnson were not authorized to intercept these communications, to cause them to be intercepted, or to induce some other person to intercept them.

118.   Defendants' interception, disclosure, and use of these electronic communications damaged Plaintiffs.

119.   Plaintiffs seek damages, in an amount unknown at this time, but, pursuant to 18 U.S.C. § 2520(c)(2), the greater of: (i) Plaintiffs' actual damages as a result of Defendants' wrongful interception, disclosure, and use of Plaintiffs' (and its agents' and employees') electronic communications, according to proof at trial; or (ii) $100 per day for Defendant's violation of the Computer Fraud and

Second Amended Complaint

1  Abuse Act, or $10,000, whichever is greater.

2       120.   Monetary damages alone would not afford adequate or complete
3  relief to Plaintiffs.

4       121.   To the extent that Defendants Dahl (through his representative or
5  successor) and  Johnson continue to intercept these communications, Plaintiffs
6  seek injunctive relief prohibiting Defendants from intercepting, causing to be
7  intercepted, or causing others to intercept these communications, for any purpose.

8       122.   To the extent that Defendants Dahl (through his representative or
9  successor) and Johnson possess copies of the information and/or communications
10  that were intercepted, Plaintiffs seek injunctive relief: (i) requiring Defendants to
11  turn over any and all such information and/or communications that they have in
12  their possession or control; and (ii) prohibiting Defendants from using such
13  information and/or communications for any purpose.

14                        **EIGHTH CAUSE OF ACTION**

15  **(By Plaintiffs Against Defendants Dahl and Johnson for Unlawful Access to**
16  **Stored Communications (18 U.S.C. § 2707))**

17       123.   Plaintiffs incorporate in this Cause of Action the allegations of
18  paragraphs 1 through 108, above.

19       124.   Plaintiffs are informed and believe, and on that basis allege, that
20  Defendants Dahl and Johnson accessed a facility through which Plaintiffs'
21  electronic communication service is provided, and thereby gained confidential
22  electronic communications between Plaintiffs and its employees and agents,
23  including, but not limited to, Zumwalt, Granger, and Service, that were at that
24  time stored on the facility.

25       125.   Defendants Dahl and Johnson were not authorized to access the
26  facility through which Plaintiffs' electronic communications are provided.

27       126.   Defendants' accessing and subsequent use of Plaintiffs' (and its
28  agents' and employees') electronic communications damaged Plaintiffs.

Second Amended Complaint

127.   Plaintiffs seek damages, in an amount unknown at this time, but, pursuant to 18 U.S.C. §§ 2707(b)-(c), the greater of (i) Plaintiffs' actual damages as a result of Defendants' wrongful access of electronic communications, according to proof at trial; or (ii) $10,000, whichever is greater.

128.   Defendants' acts were intentional, willful, and malicious. Plaintiffs are thus entitled to exemplary damages, pursuant to 18 U.S.C. § 2707(c).

129.   To the extent that Defendants continue to access the facility where Plaintiffs' electronic communications are stored, Plaintiffs seeks injunctive relief prohibiting Defendants, and each of them, from accessing that facility, for any purpose.

130.   To the extent that Defendants possess copies of the information and/or communications that were accessed, Plaintiffs seek injunctive relief: (i) requiring Defendants to turn over any and all such information and/or communications that they have in their possession or control; and (ii) prohibiting Defendants from using such information and/or communications for any purpose.

## NINTH CAUSE OF ACTION

**(By Plaintiff Apex Against Defendants for Unfair Competition – Violation of Cal. Bus. & Prof. Code Section 17200 et. seq.)**

131.   Plaintiff incorporates in this Cause of Action the allegations of paragraphs 1 through 130, above.

132.   As detailed above, Plaintiffs are informed and believe, and on that basis allege, that that at all relevant times, that HOK Sport Venue Event, now doing business as Populous Holdings, Inc., was the alter-ego of its parent, HOK Group, Inc., in that there was a unity of interest and ownership between HOK Sport Venue Event and its parent corporation, HOK Group, Inc., such that there did not exist a separateness between them, and at all relevant times, HOK Group, Inc. treated HOK Sport Venue Event as if it were not a separate entity, but instead, as a mere agency or instrumentality of HOK Group, Inc., and injustice and an

1  inequitable result will occur if the corporate veil is not pierced as all of the actions

2  of defendants defendants HOK Group, Inc. and HOK Sport Venue Event, now

3  doing business as Populous, were as one.  Therefore, HOK Group, Inc., by virtue

4  of its alter-ego relationship with HOK Sport Venue, Event, now doing business as

5  Populous, knowingly used Plaintiffs' misappropriated confidential and proprietary

6  information.

7       133.   Defendants have engaged in a variety of conduct directed towards

8  Plaintiff Apex that constitutes unfair competition and unfair business practices

9  under Business and Professions Code § 17200, including among other tortious,

10  unlawful and improper conduct, (a) Dahl and Johnson infiltrating Plaintiff's

11  proprietary computer files; (b) Dahl and Johnson deleting Plaintiff's confidential

12  and proprietary computer files; (c) upon information and belief, Dahl and Johnson

13  copying Plaintiff's confidential and proprietary computer files prior to deleting

14  them; (d) Dahl and Johnson misappropriating and using Plaintiff's confidential

15  and proprietary material; (e) upon information and belief, Populous and HOK

16  Group, Inc. using and/or intending to use Plaintiff's confidential and proprietary

17  material in its business operations in order to compete with Plaintiff.

18       134.   Defendants took the actions alleged herein with the intent to injure

19  Plaintiff, to gain an unfair competitive advantage, and to diminish their major

20  competitor.

21       135.   Defendants have profited and will, in the future, profit unjustly from

22  their unfair business practices.  Accordingly, pursuant to Business and Professions

23  Code section 17203, Plaintiff seeks an award of restitution and disgorgement.

24       136.   As a direct and proximate cause of Defendants' conduct, Plaintiff has

25  suffered damages, including without limitation, lost revenue in an amount

26  exceeding $1,000,000 from business Defendants have obtained by use and

27  disclosure of Plaintiff's confidential and proprietary information.

28       137.   Defendants' conduct presents a continuing threat to Plaintiff, and has

1 | and will continue to cause great and irreparable injury.  To the extent that

2 | Defendants continue to use and/or disclose Plaintiff's confidential and proprietary

3 | information, Plaintiff seeks injunctive relief prohibiting Defendants from using

4 | and disclosing, or causing others to use or disclose this information, for any

5 | purpose.

## TENTH CAUSE OF ACTION

### (By Plaintiff Apex Against Defendant Jeanette Johnson and DOES 11 through 20, and each of them – Successor Liability (as Successors In Interest To Defendant Jack Dahl)

138.     Plaintiff incorporates in this Cause of Action the allegations of paragraphs 1 through 137, above.

139.     As alleged herein above, plaintiffs are informed and believe, and on the basis of such information and belief allege, that Defendant Jack Dahl's estate was not administered upon his death, but instead, all of his separate property and his community property passed by law to his spouse Jeanette Johnson and/or to DOES 10 through 20, and each of them.  As such, Jeanette Johnson and/or DOES 11 through 20, and each of them, are the successors in interest to Jack Dahl.

140.     Accordingly, any judgment against Jack Dahl arising out of this action with respect to any and all of the causes of action alleged in this complaint also applies as against Jeanette Johnson and DOES 11 through 20, and each of them, to the extent of the value of any assets, including both real and personal property, that passed from Jack Dahl to Jeanette Johnson and/or DOES 11 through 20, and each of them.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

## PRAYER FOR RELIEF

1.     Pursuant to the First, Second, Third, Fourth, Fifth, Sixth and Ninth

1   Causes of Action against the Defendants named therein, compensatory damages in

2   an amount to be determined, but at least $1,000,000;

3       2.    Pursuant to the Seventh and Eighth Causes of Action against the

4   Defendants named therein, compensatory and statutory damages in an amount to

5   be determined, but at least $10,000;

6       3.    Pursuant to the First, Second, Third, Fourth, Fifth and Eighth Causes

7   of Action against the Defendants named therein, for punitive and exemplary

8   damages in an amount to be determined, but at least $1,000,000;

9       4.    Pursuant to the Second Cause of Action, that this Court require

10  Defendants, and each of them, and their respective agents, attorneys,

11  representatives, assigns, and all those acting in concert with them to return to

12  Plaintiff all documents, data, files, materials, monies, and other property that were

13  wrongfully taken from Plaintiff's custody, control, or possession;

14      5.    Pursuant to the Third, Fourth and Fifth Causes of Action, that this

15  Court issue a temporary restraining order, a preliminary injunction, and a

16  permanent injunction restraining Defendants, and each of them, and their

17  respective agents, attorneys, representatives, assigns, and all those acting in

18  concert with them from interfering with Plaintiff's contractual relations, whether

19  with its third-party clients, prospective clients, or current employees, and

20  restraining Defendants, and each of them, and their respective agents, attorneys,

21  representatives, assigns, and all those acting in concert with them from using

22  Plaintiff's and its clients' information for any purpose;

23      6.    Pursuant to the Sixth Cause of Action, that this Court issue a

24  temporary restraining order, a preliminary injunction, and a permanent injunction

25  restraining Defendants, and each of them, and their respective agents, attorneys,

26  representatives, assigns, and all those acting in concert with them, from

27  intercepting, causing to be intercepted, or causing others to use any data from

28  copies of the deleted data and an injunctive order requiring Defendants to turn

Second Amended Complaint

1  over to Plaintiffs any data recovered that belongs to Plaintiffs, and restraining

2  Defendants, and each of them, and their respective agents, attorneys,

3  representatives, assigns, and all those acting in concert with them, from using

4  Plaintiff's and its clients' information and data for any purpose;

5       7.    Pursuant to the Seventh Cause of Action, that this Court issue a

6  temporary restraining order, a preliminary injunction, and a permanent injunction

7  restraining Defendants, and each of them, and their respective agents, attorneys,

8  representatives, assigns, and all those acting in concert with them, from accessing,

9  causing to be accessed, or causing others to access the facility where Plaintiff's

10  electronic communications are stored, and restraining Defendants, and each of

11  them, and their respective agents, attorneys, representatives, assigns, and all those

12  acting in concert with them, from using Plaintiff's and its clients' information

13  acquired through accessing Plaintiff's electronic communications for any purpose;

14       8.    Pursuant to the Eighth Cause of Action, that this Court issue a

15  temporary restraining order, a preliminary injunction, and a permanent injunction

16  restraining Defendants, and each of them, and their respective agents, attorneys,

17  representatives, assigns, and all those acting in concert with them, from

18  intercepting, causing to be intercepted, or causing others to use any data from

19  copies of the deleted data and an injunctive order requiring Defendants to turn

20  over to Plaintiffs any data recovered that belongs to Plaintiffs, and restraining

21  Defendants, and each of them, and their respective agents, attorneys,

22  representatives, assigns, and all those acting in concert with them, from using

23  Plaintiff's and its clients' information and data for any purpose;

24       9.    Pursuant to the Tenth Cause of Action, compensatory damages in an

25  amount to be determined, but at least $1,000,000;

26  ///

27  ///

28  ///

—31—

Second Amended Complaint

1        10.  For costs of suit herein, including, to the extent applicable, for

2 attorneys' fees; and

3        11.  For such other and further relief as the Court deems just and proper.

4 DATED:  February 26, 2010

                                    BULLIVANT HOUSER BAILEY PC

                                    By _____

                                        Ronald L. Richman

                                    Attorneys for Plaintiffs Executive
                                    Management, Inc. d/b/a The APEX Group
                                    and Contemporary Services Corporation

12329608.1

                                 *****

Second Amended Complaint

1               **PROOF OF SERVICE**

2   *Executive Security Management, Inc. v. Jack Dahl, et al.*

3   USDC Central District Case No.: CV-09-9273-CAS-RCx

4        I am employed in the City and County of San Francisco by the law firm of

5   Bullivant Houser Bailey, PC ("the business"), 601 California Street, Suite 1800, San Francisco, CA 94108.  I am over the age of 18 and not a party to this action.

6   On March 10, 2010, I served the document(s) entitled:

7       **1.  SECOND AMENDED COMPLAINT**

8   upon the following party(ies):

9   Milford W. Dahl, Jr.

10   Mark Payne
Rutan & Tucker, LLP

11   611 Anton Blvd., 14th Flr.

12   Costa Mesa, CA  92626-1931
Tel:  714-641-5100

13   Fax:  714-546-9035

14   *Attorneys for Defendants and Cross-Complainants*
*Jack Dahl and Jeanette Johnson*

15

16   Lincoln Bandlow
Randy Merritt

17   Lathrop & Gage LLP

18   1888 Century Park East, Suite 1000
Los Angeles, CA 90067

19   Tel:  310-789-4600

20   Fax:  310-789-4601

21   *Attorneys for Defendants*
*Populous Holdings, Inc. and HOK Group, Inc.*

22

23   ☒    BY MAIL (CCP § 1013(a)):  I am readily familiar with the ordinary

24         practice of the business with respect to the collection and processing of correspondence for mailing with the United States Postal Service.  I placed

25         a true and correct copy(ies) of the above-titled document(s) in an envelope(s) addressed as above, with first class postage thereon fully

26         prepaid.  I sealed the aforesaid envelope(s) and placed it(them) for

27         collection and mailing by the United States Postal Service in accordance with the ordinary practice of the business.  Correspondence so placed is

28

ordinarily deposited by the business with the United States Postal Service on the same day.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 10, 2010, at San Francisco, California.

Cristina Bonnevie

PROOF OF SERVICE