Renee E. Rothauge, SBN 271239
MARKOWITZ, HERBOLD, GLADE &
MEHLHAF, P.C.
1211 SW Fifth Avenue, Suite 3000
Portland, OR 97204
Telephone: 503.295.3085
Facsimile: 503.323.9105
Email: ReneeRothauge@MHGM.com

Ronald L. Richman, SBN 139189
C. Todd Norris, SBN 181337
BULLIVANT HOUSER BAILEY PC
601 California Street, 18th Floor
San Francisco, CA 94108
Telephone: 415.352.2700
Facsimile: 415.352-2701
Email: ron.richman@bullivant.com
Email: todd.norris@bullivant.com

Attorneys for Plaintiffs and Cross
Defendants
EXECUTIVE SECURITY
MANAGEMENT, INC., dba THE
APEX GROUP, CONTEMPORARY
SERVICES CORPORATION and Cross
Defendant DAMON ZUMWALT

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXECUTIVE SECURITY MANAGEMENT, INC., a California corporation, d/b/a The APEX Group and CONTEMPORARY SERVICES CORPORATION, a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> JACK DAHL, an individual, JEANETTE JOHNSON, in her individual capacity and as successor in interest to Jack Dahl, POPULOUS HOLDINGS, INC., a Delaware corporation, formerly known as HOK Sport Venue Event, HOK Group, Inc., a Delaware corporation, <br><br> Defendants. <br><br>——————————————— <br> AND RELATED CROSS-ACTION. <br>——————————————— | Case No. CV-09-9273 CAS (JEMx) <br><br> Judge: Hon. Christina A. Snyder <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [REDACTED VERSION]** <br><br> Date:      October 24, 2011 <br> Time:      10:00 a.m. <br> Ctroom:   5 |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................1

II. ARGUMENT ........................................................................................2

  A. Summary judgment standards. ..........................................................2

  B. The Court should grant summary judgment in favor of APEX, CSC, and Zumwalt and against Johnson on her Second Cause of Action for Intentional Infliction of Emotional Distress. .........................3

    1. Johnson is precluded under the law of the case doctrine from re-litigating the state court's determination that most of her allegations do not state an actionable IIED claim. ...............3

    2. Johnson's claimed emotional distress damages are unrecoverable. .................................................................................4

    3. There is no evidence that APEX, CSC, or Zumwalt engaged in the conduct alleged in Johnson's IIED claim. ...........................5

  C. The Court should grant summary judgment in favor of APEX and CSC and against Dahl and Johnson on their Third and Fourth Causes of Action for Misappropriation of Name on the ground that there is no evidence of a knowing use of Dahl and Johnson's name. 6

  D. The Court should grant summary judgment in favor of APEX and CSC and against Johnson on her Seventh Cause of Action for Failure to Pay Overtime Wages and Eighth Cause of Action for Failure to Provide Itemized Wage Statements on the ground that Johnson was an exempt employee. ..........................................................7

    1. Administrative exemption. ...............................................................8

    2. Executive exemption. ....................................................................11

  E. The Court should grant summary judgment in favor of APEX and CSC and against Dahl and Johnson on their Thirteenth and Fourteenth Causes of Action on the ground that they are not entitled to indemnity for costs they incurred to defend themselves in this litigation. .................................................................................12

  F. The Court should grant summary judgment in favor of Zumwalt and against Dahl on his Fifteenth Cause of Action for Breach of Fiduciary Duty on the grounds that Dahl suffered no injury as a shareholder and, even if he did, that claim must be brought as a derivative claim. ..............................................................................14

    1. There is no evidence that Dahl suffered injury as a shareholder. .................................................................................15

    2. Dahl cannot bring his fiduciary duty claim as a direct claim. ......15

III. CONCLUSION...................................................................................17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Avikian v. WTC Fin. Corp.,*
    98 Cal. App.4th 1108, 120 Cal. Rptr.2d 243 (2002) ......................................... 16

*Cassady v. Morgan, Lewis & Bockius LLP,*
    145 Cal. App.4th 220 (2006) ......................................................................... 13

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986) ............................... 2, 6

*Combs v. Skyriver Commc'ns, Inc.,*
    159 Cal. App.4th 1242, 72 Cal. Rptr.3d 171 (2008) ...................................... 7, 8

*Devens v. Goldberg,*
    33 Cal.2d 173, 199 P.2d 943 (1948) ............................................................. 12

*Downing v. Abercrombie & Fitch,*
    265 F.3d 994 (9th Cir. 2001) ......................................................................... 6

*Eastwood v. Super. Ct.,*
    149 Cal. App.3d 409, 198 Cal. Rptr. 342 (1983) ........................................... 6

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters Local 70,*
    415 U.S. 423, 94 S. Ct. 1113, 39 L. Ed.2d 435 (1974) .................................. 3

*Jacobus v. Krambo Corp.,*
    78 Cal. App.4th 1096 (2000) ........................................................................ 13

*Jara v. Suprema Meats, Inc.,*
    121 Cal. App.4th 1238, 18 Cal. Rptr.3d 187 (2004) ...................................... 15

*Jones v. H. F. Ahmanson & Co.,*
    1 Cal.3d 93, 81 Cal.Rptr. 592 (1969) ........................................................... 15

*Komarova v. Nat'l Credit Acceptance, Inc.,*
    175 Cal. App.4th 324, 95 Cal. Rptr.3d 880 (2009) ....................................... 4, 5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed.2d 538 (1986) ................................ 2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

*Nelson v. Anderson,*
 72 Cal. App.4th 111, 84 Cal. Rptr.2d 753 (1999) ............................................... 16

*Newson v. Wal-Mart Stores, Inc.,*
 2009 WL 1844351 (E.D. Cal. 2009) ..................................................................... 3

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.,*
 210 F.3d 1099 (9th Cir. 2000) .............................................................................. 2

*Pac. Employers Ins. Co. v. Sav-a-Lot of Winchester,*
 291 F.3d 392 (8th Cir. 2002) ................................................................................ 4

*Polydoros v. Twentieth Century Fox Film Corp.,*
 67 Cal. App.4th 318, 79 Cal. Rptr.2d 207 (1997) ............................................... 6

*Ramirez v. Yosemite Water Co., Inc.,*
 20 Cal.4th 785, 85 Cal. Rptr.2d 844 (1999) ........................................................ 7

*Redfield v. Continental Cas. Co.,*
 818 F.2d 596 (7th Cir. 1987) ................................................................................ 3

*Rideaux v. Torgrimson,*
 39 Cal. App.2d 273, 102 P.2d 1104 (1940) ....................................................... 12

*Schuster v. Gardner,*
 127 Cal. App. 4th 305, 25 Cal. Rptr.3d 468 (2005) ....................... 14, 15, 16, 17

*Scott v. Harris,*
 550 U.S. 372, 127 S.Ct. 1769, 167 L. Ed.2d 686 (2007) .................................... 2

*Silberg v. Anderson,*
 50 Cal.3d 205, 266 Cal. Rptr. 638 (1990) ........................................................... 4

*Smith v. Tele-Commc'ns, Inc.,*
 134 Cal. App.3d 338, 184 Cal. Rptr. 571 (1982) .............................................. 15

*Stewart v. Rolling Stone LLC,*
 181 Cal. App.4th 664, 105 Cal. Rptr.3d 98 (2010) ............................................. 6

*Thomas v. Bible,*
 983 F.2d 152 (9th Cir. 1993) ................................................................................ 3

*United States v. Cuddy,*
 147 F.3d 1111 (9th Cir. 1998) .............................................................................. 3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

*United States v. Lummi Indians,*
   235 F.3d 443 (9th Cir. 2000) ............................................................. 3

**STATUTES**

California Civil Code § 47(b) ............................................................. 4

Civil Code § 3344 ............................................................................. 6

Labor Code § 515(a) ......................................................................... 7

Labor Code § 2800............................................................... 12, 13

Labor Code § 2802............................................................................. 14

Labor Code § 2802(a) ....................................................................... 13

**OTHER AUTHORITIES**

29 C.F.R. § 541.201(a) ...................................................................... 8

29 C.F.R. § 541.201(b) ...................................................................... 8

29 C.F.R. § 541.202(b) ...................................................................... 9

Cal. Code Regs., tit. 8, § 11040(1)(A)............................................. 8

Cal. Code Regs., tit. 8, § 11040(1)(A)(2)(f) .................................... 8

Cal. Code Regs., tit. 8, § 11040(2)(N)............................................. 9

Fed. R. Civ. P. 56(a) ......................................................................... 2

IWC Wage Order No. 4-2001 ..................................................... 7, 8

IWC Wage Order No. 4-2001(1): ..................................................... 11

IWC Wage Order No. 4-2001(2): ..................................................... 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# I. INTRODUCTION

This lawsuit involves two former corporate executives—Jack Dahl and Jeanette Johnson, husband and wife—who used their positions to enrich themselves at the expense of their employers, Executive Security Management, Inc. dba The Apex Group ("Apex") and Contemporary Services Corporation ("CSC").  As schemes go, Dahl and Johnson's was not particularly complicated: they wrongfully took confidential and proprietary information that they had access to as corporate executives, and used it to further their private interests and the interests of their new employer, Populous Holdings, Inc. and HOK Group, Inc.— who were Apex and CSC's competitors.  In the process, they tortiously harmed APEX and CSC.

In response to Apex and CSC's lawsuit against them, Dahl and Johnson filed a Cross-Complaint.  In this motion, Cross-Defendants APEX, CSC, and Damon Zumwalt will demonstrate that, as a matter of law, the Court should grant summary judgment in their favor and against Dahl and Johnson on the following causes of action:

- Johnson's Second Cause of Action for Intentional Infliction of Emotional Distress on the grounds that most of Johnson's allegations of emotional distress have already been judicially dismissed and the harm allegedly caused by any conduct by APEX, CSC, and Zumwalt is not actionable;

- Dahl and Johnson's Third and Fourth Causes of Action for Misappropriation of Names on the ground that there is no evidence that any misappropriation was intentional;

- Johnson's Seventh Cause of Action for Failure to Pay Overtime Wages and Eighth Cause of Action for Failure to Provide Itemized Wage Statements on the ground that Johnson was an exempt employee;

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

- Dahl and Johnson's Thirteenth and Fourteenth Causes of Action for Failure to Reimburse Expenses on the ground that litigation costs are not recoverable; and

- Dahl's Fifteenth Cause of Action for Breach of Fiduciary Duty on the grounds that there is no evidence that Dahl suffered any injury as a shareholder and, to the extent that any injury occurred to the corporation, Dahl must seek recovery through a derivative action.

## II. ARGUMENT

### A. Summary judgment standards.

After a party moves for summary judgment, the district court must grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Where, as here, the movant does not bear the burden of proof at trial with respect to the claim on which judgment is sought, then it "must show an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986).  The movant need not negate the other party's claim but needs only to show that there is a lack of evidence on an essential element of that party's claim. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000).

The nonmoving party then "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed.2d 538 (1986).  And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L. Ed.2d 686 (2007).

– 2 –

**B.**     **The Court should grant summary judgment in favor of APEX, CSC, and Zumwalt and against Johnson on her Second Cause of Action for Intentional Infliction of Emotional Distress.**

      **1.**     **Johnson is precluded under the law of the case doctrine from re-litigating the state court's determination that most of her allegations do not state an actionable claim for intentional infliction of emotional distress.**

This lawsuit was originally filed in the Los Angeles County Superior Court. On July 14, 2008, Superior Court Judge Jerry Fields dismissed most of the allegations from Johnson's intentional infliction of emotional distress claim—leaving only the allegations at paragraph 32(a). (*See* Cross-Defendants' Statement of Undisputed Facts ("SUF") No. 1.) The dismissal was without leave to amend. (*Id.*) It is the law of the case.

Under the law of the case doctrine, a district court is generally precluded from reconsidering an issue that has already been decided by the same court or a higher court in the same case. *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993). "For the doctrine to apply, the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition." *United States v. Lummi Indians*, 235 F.3d 443, 452 (9th Cir. 2000). Application of the doctrine is discretionary, and a court abuses its discretion in applying the law of the case doctrine only if (1) the first decision was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998).

The dismissal of Johnson's IIED allegations by the Los Angeles County Superior Court without leave to amend is the law of the case. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters Local 70*, 415 U.S. 423, 436, 94 S. Ct. 1113, 39 L. Ed.2d 435 (1974) (once a case is removed to federal court the law of the case applies and "the federal court takes the case up where the State left it off."); *Newson v. Wal-Mart Stores, Inc.*, 2009 WL 1844351, at *5 (E.D. Cal.

1 | 2009) (citing *Redfield v. Continental Cas. Co.*, 818 F.2d 596, 605 (7th Cir. 1987)
2 | (law of the case doctrine applies to rulings made by state courts prior to removal
3 | unless the state court ruling conflicts with the Federal Rules of Civil Procedure);
4 | *Pac. Employers Ins. Co. v. Sav-a-Lot of Winchester*, 291 F.3d 392, 398 (8th Cir.
5 | 2002) (same).  Johnson should therefore be precluded from relying on any of her
6 | IIED allegations except for those set forth in paragraph 32(a).

7 | **2.   Johnson's claimed emotional distress damages are unrecoverable.**



9 | (SUF No. 2.) According to the therapist,

13 | (SUF No. 3.) Johnson specifically did not raise any issues regarding her CSC
14 | employment, or how she felt when she was working at CSC, or any "fear" that she
15 | might have felt related to CSC or APEX.  (*Id.*)  Nor did she report any other
16 | incidents that she now says contributed to her alleged emotional distress.  (*Id.*)

17 | APEX, CSC, and Zumwalt had nothing to do with the first three causes of
18 | Johnson's emotional distress identified by her therapist.  And under California
19 | law, they cannot be held liable for emotional distress caused by this lawsuit.

20 | California Civil Code § 47(b) creates an absolute privilege for a
21 | "publication or broadcast" made as part of a "judicial proceeding."  Known as the
22 | litigation privilege, section 47(b) immunizes defendants from tort liability based
23 | on, for example, intentional infliction of emotional distress caused by a lawsuit.
24 | *See Silberg v. Anderson*, 50 Cal.3d 205, 210–211, 219–220, 266 Cal. Rptr. 638
25 | (1990) (litigation privilege precludes intentional infliction of emotional distress
26 | cause of action based on communications in furtherance of the objects of the
27 | litigation); *Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App.4th 324, 336-
28 | 37, 95 Cal. Rptr.3d 880 (2009).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    As the court noted in *Komarova*,

2        The purposes of section 47, subdivision (b), are to afford

3        litigants and witnesses free access to the courts without

4        fear of being harassed subsequently by derivative tort

5        actions, to encourage open channels of communication

6        and zealous advocacy, to promote complete and truthful

7        testimony, to give finality to judgments, and to avoid

8        unending litigation.  To effectuate these purposes, the

9        litigation privilege is absolute and applies regardless of

10       malice.

11  175 Cal. App.4th at 336-37 (citations omitted).

12       Because it is undisputable that Johnson's IIED claim is based on emotional

13  distress ███████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████████████████

15  ████████████████████ (all of which had nothing to do with APEX, CSC, and

16  Zumwalt), and because emotional distress caused by this lawsuit is not

17  recoverable under California law, the Court should grant summary judgment in

18  favor of cross-defendants and against Johnson on her Second Cause of Action for

19  Intentional Infliction of Emotional Distress.

20       **3.    There is no evidence that APEX, CSC, or Zumwalt engaged in
21            the conduct alleged in Johnson's IIED claim.**

22       The only IIED allegations that have not been dismissed allege that Zumwalt

23  "determined to falsify allegations against Dahl and his wife Johnson and purported

24  to initiate investigations against Dahl and Johnson and using said purported

25  investigation undertook to defame, threaten, and harm Dahl and Johnson." (SUF

26  No. 4.)  Despite extensive discovery in this lawsuit, Johnson failed to present any

27  evidence that Damon Zumwalt made false allegations against Dahl and Johnson,

28  or otherwise defamed, threatened, or harmed them.

1    Based on the above, the Court should grant summary judgment in favor of

2 cross-defendants and against Johnson on her Second Cause of Action for

3 Intentional Infliction of Emotional Distress.

4  **C.  The Court should grant summary judgment in favor of APEX and CSC
5      and against Dahl and Johnson on their Third and Fourth Causes of
       Action for Misappropriation of Name on the ground that there is no
6      evidence of a knowing use of Dahl and Johnson's name.**

7    In their Third and Fourth Causes of Action for Misappropriation of Names,

8 Dahl and Johnson—relying on Civil Code § 3344—allege that APEX and CSC

9 misused their name on the APEX website after their employment terminated.  In

10 order to establish a claim for violation of section 3344, a plaintiff must prove the

11 four elements of a common law claim for invasion of privacy, which are:

12    1.    The defendant's use of the plaintiff's identity;

13    2.    The appropriation of plaintiff's name or likeness to defendant's

14          advantage, commercially or otherwise;

15    3.    Lack of consent; and

16    4.    Resulting injury.

17 *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) (citing

18 *Eastwood v. Super. Ct.*, 149 Cal. App.3d 409, 417-18, 198 Cal. Rptr. 342 (1983)).

19 The plaintiff must also show a ***knowing*** use by the defendant and a direct

20 connection between the alleged use and a commercial purpose.  *Polydoros v.*

21 *Twentieth Century Fox Film Corp.*, 67 Cal. App.4th 318, 322, 79 Cal. Rptr.2d 207

22 (1997); *see also Stewart v. Rolling Stone LLC*, 181 Cal. App.4th 664, 680, 105

23 Cal. Rptr.3d 98 (2010).

24    As noted above, when, as here, a party moves for summary judgment on a

25 claim for which it does not have the burden of proof, it meets its summary

26 judgment burden by "pointing out to the district court . . . that there is an absence

27 of evidence" supporting a fact for which the nonmoving party bears the burden of

28 proof.  *Celotex*, 477 U.S. at 325.  There is simply no evidence that the failure to

– 6 –

1  remove Dahl and Johnson's names from the APEX website was anything but an

2  innocent mistake.  Indeed, to the extent that affirmative evidence showing that the

3  failure was innocent is required, that evidence is in the record.  (SUF No. 5.)

4   Based on the above, the Court should grant summary judgment in favor of

5  Cross-Defendants and against Dahl and Johnson, on their Third and Fourth Causes

6  of Action for Misappropriation of Name.

7  **D.   The Court should grant summary judgment in favor of APEX and CSC
   and against Johnson on her Seventh Cause of Action for Failure to Pay**

8  **Overtime Wages and Eighth Cause of Action for Failure to Provide
   Itemized Wage Statements on the ground that Johnson was an exempt**

9  **employee.**

10   In her Seventh Cause of Action for Failure to Pay Overtime Wages and

11  Eighth Cause of Action for Failure to Provide Itemized Wage Statements, Johnson

12  alleges that she was not paid overtime or given itemized wage statements by CSC.

13  Both of those claims rise—or fall—with her assertion that she was a non-exempt

14  employee.  But, based on the uncontroverted evidence in this case, that assertion is

15  unsupportable.  Johnson was, at all times, an exempt employee.

16   The California Industrial Welfare Commission ("IWC") is "empowered to

17  formulate regulations (known as wage orders) governing minimum wages,

18  maximum hours, and overtime pay" in California.  *Ramirez v. Yosemite Water*

19  *Co., Inc.*, 20 Cal.4th 785, 795, 85 Cal. Rptr.2d 844 (1999).  The IWC also has the

20  power to establish exemptions from the payment of overtime for administrative

21  and executive employees "provided that the employee is primarily engaged in the

22  duties that meet the test of the exemption, customarily and regularly exercises

23  discretion and independent judgment in performing those duties, and earns a

24  monthly salary equivalent to no less than two times the state minimum wage for

25  full-time employment[.]"  Labor Code § 515(a).

26   IWC Wage Order No. 4-2001 exempts "persons employed in

27  administrative, executive, or professional capacities."  *Combs v. Skyriver*

28  *Commc'ns, Inc.*, 159 Cal. App.4th 1242, 1253-1254, 72 Cal. Rptr.3d 171 (2008)

– 7 –

1 (quoting Cal. Code Regs., tit. 8, § 11040(1)(A).)  Johnson was an exempt

2 employee under the administrative and executive exemptions.

**1.     Administrative exemption.**

4 According to IWC Wage Order No. 4-2001(2):

> A person employed in an administrative capacity means
>
> any employee: [¶] (a) Whose duties and responsibilities
>
> involve . . . [¶] [t]he performance of office or non-
>
> manual work directly related to management policies or
>
> general business operations of his/her employer or his
>
> employer's customers . . .; and [¶] (b) Who customarily
>
> and regularly exercises discretion and independent
>
> judgment; and [¶] . . . [¶] (e) Who executes under only
>
> general supervision special assignments and tasks; . . .
>
> and [¶] (f) Who is primarily engaged in duties that meet
>
> the test of the exemption. . . . [¶] (g) Such employee
>
> must also earn a monthly salary equivalent to no less
>
> than two ( 2 ) times the state minimum wage for full-
>
> time employment [40 hours per week].

19 According to a Fair Labor Standards Act regulation that has been expressly

20 incorporated into IWC Wage Order No. 4-2001 (*see* Cal. Code Regs., tit. 8, §

21 11040(1)(A)(2)(f)), "[t]he phrase 'directly related to the management or general

22 business operations' refers to the type of work performed by the employee.  To

23 meet this requirement, an employee must perform work directly related to

24 assisting with the running or servicing of the business, as distinguished, for

25 example, from working on a manufacturing production line or selling a product in

26 a retail or service establishment." 29 C.F.R. § 541.201(a); *Combs*, 159 Cal.

27 App.4th at 1254.  It includes advertising and marketing functions. 29 C.F.R. §

28 541.201(b); *Combs*, 159 Cal. App.4th at 1255.

– 8 –

The phrase "discretion and independent judgment" involves factors such as "whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; . . . whether the employee provides consultation or expert advice to management; [and] whether the employee is involved in planning long- or short-term business objectives[.]" 29 C.F.R. § 541.202(b). The term "primarily" is defined to mean "more than one-half the employee's work time." Cal. Code Regs., tit. 8, § 11040(2)(N).

The following evidence shows that Johnson was an administrative employee:

- According to Johnson, she does not know if she was an exempt or non-exempt employee. (SUF No. 6.)

- Johnson was hired by CSC in July 1998. She was hired as a salaried employee, with a salary of $32,000 per year. The state minimum wage in 1998 was $5.75 per hour—or approximately $11,500 per year. (SUF No. 7.)

- Johnson received a salary increase on July 12, 1999, increasing her salary to $36,000 per year. The state minimum wage in 1999 was $5.75 per hour—or approximately $11,500 per year. (SUF No. 8.)

- Johnson received a salary increase on July 28, 2001, increasing her salary to $40,000. The state minimum wage for 2001 was $6.25 per hour—or approximately $12,500 per year. (SUF No. 9.)

- Johnson received a salary increase on June 21, 2003, increasing her salary to $48,000. The state minimum wage for 2003 was $6.75 per hour—or approximately $13,500 per year. (SUF No. 10.)

- Johnson received a salary increase on July 17, 2004, increasing her salary to $50,800. The state minimum wage for 2004 was $6.75 per hour—or approximately $13,500 per year. (SUF No. 11.)

– 9 –

- In 2005, 2006, and 2007, Johnson's salary remained the same. The state minimum wage for 2005 and was $6.75 per hour—or approximately $13,500 per year. The state minimum wage for 2007 was $7.50 per hour—or approximately $15,000 per year. (<u>SUF No. 12</u>.)

- Johnson was not required to keep track of her hours worked when she started or ended work. (<u>SUF No. 13</u>.)

- Bridgett Ott, an APEX employee, was supervised by Johnson when working credentialing events performed by APEX. Ott worked directly under Johnson for those credentialing events. Ott was a salaried employee, and her position was junior to Johnson's position. (<u>SUF No. 14</u>.)

In addition, Johnson performed marketing and advertising functions for CSC and managed the credentialing operations for and on behalf of APEX:

- She was the operations manager for the Super Bowl contracts performed by APEX while she was employed at CSC. (<u>SUF No. 15</u>.)

- She communicated directly with APEX clients. (<u>SUF No. 16</u>.)

- She represented herself as having project management skills during her employment with CSC. (<u>SUF No. 17</u>.)

- She represented herself as a senior project manager for the Super Bowl accreditation contracts performed by APEX while she was an APEX employee. (<u>SUF No. 18</u>.)

- She was responsible for telling staff what to do at APEX credentialing events when she was employed at CSC. (<u>SUF No. 19</u>.)

- She was the senior project manager and she implemented and managed the daily media and non-media accreditation centers for the Sugar Bowl, Fiesta Bowl, Insight Bowl, and Championship games—accreditation contracts performed by APEX while she was employed

– 10 –

at CSC.  Johnson also managed the credentialing process, guiding
people on what they should and should not be doing, training people,
and correcting people when they were not performing their jobs
correctly.  (SUF No. 20.)

- Johnson, on behalf of APEX, communicated directly with Rick
  Nixon, Associate Director of the NCAA Women's Basketball
  Championships, regarding the credentialing work performed by
  APEX for the NCAA Women's Basketball Championships.  Johnson
  was the primary contact between Mr. Nixon, the NCAA Women's
  Basketball Championships, and APEX.  (SUF No. 21.)

In sum, based on payroll reports and paystubs that show that Johnson was a
salaried employee and her admission that she, in fact, managed certain
credentialing operations on behalf of APEX, it is undisputable that Johnson had
authority to formulate and implement short and long-term management policies
related to CSC's marketing and advertising objectives.  She performed her tasks
under general supervision, and she managed and supervised staff at Apex
credentialing events.

Based on the above, this Court should grant summary judgment in favor of
cross-defendants and against Johnson on her Seventh Cause of Action for Failure
to Pay Overtime Wages and Eighth Cause of Action for Failure to Provide
Itemized Statements.

**2.  Executive exemption.**

According to IWC Wage Order No. 4-2001(1):

A person employed in an executive capacity means any
employee:  [¶] (a) Whose duties and responsibilities
involve the management of the enterprise in which
he/she is employed or of a customarily recognized
department or subdivision thereof; and [¶] (b) Who

– 11 –

1         customarily and regularly directs the work of two or

2         more other employees therein; and [¶] (c) Who has the

3         authority to hire or fire other employees or whose

4         suggestions and recommendations as to the hiring or

5         firing and as to the advancement and promotion or any

6         other change of status of other employees will be given

7         particular weight; and [¶] (d) Who customarily and

8         regularly exercises discretion and independent judgment;

9         and [¶] (e) Who is primarily engaged in duties which

10       meet the test of the exemption.

11       Relying upon the undisputable facts set forth above, Johnson meets the test

12 of an executive employee.  Therefore, Johnson was an exempt employee under

13 California law and, as a matter of law, the Court should grant summary judgment

14 in favor of cross-defendants and against Johnson on her Seventh Cause of Action

15 for Failure to Pay Overtime Wages and Eighth Cause of Action for Failure to

16 Provide Itemized Statements.

17
**E.  The Court should grant summary judgment in favor of APEX and CSC**
18      **and against Dahl and Johnson on their Thirteenth and Fourteenth**
        **Causes of Action on the ground that they are not entitled to indemnity**
19      **for costs they incurred to defend themselves in this litigation.**

20       Dahl and Johnson's Thirteenth and Fourteenth Causes of Action for Failure

21 to Reimburse Expenses seek recovery of costs Dahl and Johnson have incurred to

22 defend themselves in this lawsuit.  Those costs are not recoverable under Labor

23 Code §§ 2800 or 2802.

24       In California, "an employer is under a duty to furnish a safe working place

25 for his employees." *Devens v. Goldberg*, 33 Cal.2d 173, 178, 199 P.2d 943

26 (1948).  It is in that context that Labor Code § 2800 requires an employer to

27 "indemnify his employee for losses caused by the employer's want of ordinary

28 care." *Id.* (applying section 2800 in context of employer's duty to exercise

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1   ordinary care with regard to the safety of employees); *see also Rideaux v.*

2   *Torgrimson*, 39 Cal. App.2d 273, 102 P.2d 1104 (1940) (involving injuries

3   suffered by employee as a result of a car crash).  There is no legal authority

4   supporting Dahl and Johnson's claim that APEX and CSC must indemnify them—

5   under section 2800—for costs they have incurred to defend themselves from

6   APEX and CSC's claims against them.  Nor is there any evidence that those

7   claims arose from APEX and CSC's "want of ordinary care."  So section 2800

8   does not apply.

9        Labor Code § 2802(a) requires an employer to "indemnify his or her

10  employee for all necessary expenditures or losses incurred by the employee in

11  direct consequence of the discharge of his or her duties[.]"  The indemnity right

12  includes "attorney's fees and costs incurred in defending a third-party lawsuit,

13  where such expenses are necessary and the lawsuit is based on the employee's

14  conduct within the course and scope of his or her job duties." *Cassady v. Morgan,*

15  *Lewis & Bockius LLP*, 145 Cal. App.4th 220, 224 (2006).  Thus, under the statute,

16  if an employee incurs expenses to defend a ***third-party claim*** that was brought

17  against him as a consequence of the discharge of his duties to his employer, the

18  employer must indemnify the employee for those necessary expenses.

19       APEX and CSC's claims against Dahl and Johnson are not third-party

20  claims—they are direct claims by a former employer against a former employee.

21  And because those claims raise allegations of malfeasance against Dahl and

22  Johnson, they do not concern acts taken "in direct consequence of the discharge of

23  his or her duties."  Instead, those acts, which included breaches of fiduciary duty,

24  conversion, and interference with contract, were adverse to the interests of APEX

25  and CSC and were taken without authorization for Dahl and Johnson's own

26  personal benefit.  An employee's conduct falls outside his or her duties "if the

27  employee substantially deviates from his or her course of duty so as to amount to a

28  complete departure." *Jacobus v. Krambo Corp.*, 78 Cal. App.4th 1096, 1101-1102

– 13 –

1    (2000). Dahl and Johnson cannot credibly argue that their torts against their

2    employers fall within an employee's course of duty.

3         Because Dahl and Johnson's acts were adverse to the interests of APEX and

4    CSC, they cannot recover—under Labor Code § 2802—the costs they have

5    incurred to defend themselves against their former employers' claims.

6         Based on the above, this Court should grant summary judgment in favor of

7    cross-defendants and against Dahl and Johnson on their Thirteenth and Fourteenth

8    Causes of Action for Failure to Reimburse Expenses.

9    **F.    The Court should grant summary judgment in favor of Zumwalt and**

10   **against Dahl on his Fifteenth Cause of Action for Breach of Fiduciary**
     **Duty on the grounds that Dahl suffered no injury as a shareholder and,**

11   **even if he did, that claim must be brought as a derivative claim.**

12        In his Fifteenth Cause of Action for Breach of Fiduciary Duty, Dahl alleges

13   that he was a minority shareholder of APEX, and that Zumwalt breached

14   fiduciaries duties that he owed—as an APEX officer and director—to Dahl. In

15   California, shareholders can bring two types of actions:

16             a *direct* action filed by the shareholder individually . . .

17             for injury to his or her interest as a *shareholder*, or a

18             *derivative* action filed on *behalf* of the corporation for

19             *injury to the corporation* for which it has failed or

20             refused to sue. The two actions are mutually exclusive:

21             i.e., the right of action and recovery belongs either to the

22             *shareholders* (direct action) or to the *corporation*

23             (derivative action).

24   *Schuster v. Gardner*, 127 Cal. App. 4th 305, 311-312, 25 Cal. Rptr.3d 468 (2005)

25   (citations omitted) (emphasis in original).

26        This Court, as a matter of law, should grant summary judgment in favor of

27   Zumwalt and against Dahl on the grounds that: (1) there is no evidence that Dahl

28   suffered any injury as a shareholder; and (2) to the extent that any injury occurred

– 14 –

to the corporation, Dahl must seek recovery through a derivative action.

**1.      There is no evidence that Dahl suffered injury as a shareholder.**

Dahl alleges that his breach of fiduciary duty claim is based on the alleged intentional infliction of emotional distress, misappropriation of name, failure to pay wages, failure to provide access to corporate records, failure to provide itemized wage statements, and failure to provide access to personnel records.  He alleges that because of those supposed breaches of fiduciary duty, "Dahl has been damaged in an amount currently unknown" and that he "has sustained general damages for emotional distress[.]"  (SUF No. 22.)

To prove his claim, Dahl must prove that he suffered injuries to his *interest as a minority shareholder*.  *Jones*, 1 Cal.3d at 106-07; *Smith v. Tele-Commc'ns, Inc.*, 134 Cal. App.3d 338, 343, 184 Cal. Rptr. 571 (1982).  Thus, for example, shareholders can sue to compel the payment of a distribution.  *See Schuster*, 127 Cal. App.4th at 313.  Or they can sue to receive a share of disguised distributions paid to a majority shareholder.  *See Jara v. Suprema Meats, Inc.*, 121 Cal. App.4th 1238, 1259-60, 18 Cal. Rptr.3d 187 (2004).  But of the many decisions involving an officer or director's alleged breach of fiduciary duty, none have allowed the recovery of damages in the circumstances alleged in the Cross-Complaint.  In other words, none of those decisions have found that the type of damages alleged by Dahl constitute an injury to the shareholder's interest in the corporation.

Based on the above, in the absence of any evidence that Dahl suffered injuries to his interest as a shareholder, this Court, as a matter of law, must grant summary judgment in favor of Zumwalt and against Dahl on the Fifteenth Cause of Action for Breach of Fiduciary Duty.

**2.      Dahl cannot bring his fiduciary duty claim as a direct claim.**

A shareholder derivative suit "seeks to recover for the benefit of the corporation and its whole body of shareholders when injury is caused to the corporation that may not otherwise be redressed because of failure of the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1   corporation to act." *Jones*, 1 Cal.3d at 106. "An individual cause of action exists
2   only if damages to the shareholders were not incidental to damages to the
3   corporation." *Schuster*, 127 Cal. App.4th at 313. "[W]hether the [plaintiff] 'seeks
4   to recover on behalf of all the stockholders, or tries to pursue claims on behalf of
5   some subset, the damages sought are still incidental to the alleged injury to [the
6   corporation], and any recovery should go to the company.'" *Id.* at 314.

7       To the extent that Dahl claims that Zumwalt's alleged wrongdoing—at, for
8   example, Super Bowl 42—caused him to lose money that he would have received
9   from APEX, that claim must be brought as a derivative claim. *See Avikian v.*
10  *WTC Fin. Corp.*, 98 Cal. App.4th 1108, 120 Cal. Rptr.2d 243 (2002); *Nelson v.*
11  *Anderson*, 72 Cal. App.4th 111, 84 Cal. Rptr.2d 753 (1999).

12      In *Avikian*, plaintiff shareholders claimed that the officers and directors
13  looted the assets of a corporation by entering into self-serving deals to sell the
14  corporate assets to a third party. Additionally, plaintiffs claimed that they had
15  located an investor willing to rescue the corporation, but that defendants "chose to
16  pursue their own self-serving arrangements." 98 Cal. App.4th at 1116. The Court
17  of Appeals concluded that the claims were strictly derivative—"those damages are
18  nothing more than a claim of damage to the corporation generally." *Id.*

19      In *Nelson*, a sole minority shareholder brought a direct action for breach of
20  fiduciary duty against the corporation's sole majority shareholder and director,
21  alleging mismanagement resulting in the minority shareholder's loss of potential
22  earnings. Reversing the trial court, the Court of Appeals held that the claims were
23  derivative: "Whether there is one minority shareholder or many, an action is
24  individual only if the stock of the individual plaintiff or plaintiffs is the only stock
25  affected adversely. Here, the corporation lost earnings, profits and opportunities,
26  rendering all the shares valueless. When the injury is to the 'whole body of
27  stock,' the action must be derivative." 72 Cal. App.4th 111 at 127.

28

– 16 –

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Thus, in a derivative action, the corporation "is the real plaintiff and it alone

2 benefits from the decree; the stockholders derive no benefit therefrom except the

3 indirect benefit resulting from a realization upon the corporation's assets." *Jones*,

4 1 Cal.3d at 107; *Schuster*, 127 Cal. App.4th at 312.

5    Because Dahl's breach of fiduciary duty claim, to the extent that it seeks

6 recoverable damage, only seeks damage allegedly suffered by all of the APEX

7 shareholders, it must be brought as a derivative action—not as a direct action.

8    Based on the above, the Court should grant summary judgment in favor of

9 Zumwalt and against Dahl on the Fifteenth Cause of Action for Breach of

10 Fiduciary Duty.

## III.  CONCLUSION

12    For the reasons discussed above, partial summary judgment should be

13 entered as follows:  (1) summary judgment in favor of APEX and CSC and against

14 Dahl and Johnson on Dahl and Johnson's Second, Third, Fourth, Seventh, Eighth,

15 Thirteenth, and Fourteenth Causes of Action; and (2) summary judgment in favor

16 of Zumwalt and against Dahl and Johnson on their Second and Fifteenth Causes of

17 Action.

18 DATED:  August 3, 2011

19                               BULLIVANT HOUSER BAILEY PC

20

21                               By _____ */s/ C. Todd Norris* _____
22                                   Ronald L. Richman
                                     C. Todd Norris

23                               Attorneys for Plaintiffs
24                               EXECUTIVE SECURITY
                                 MANAGEMENT, INC., dba THE APEX
                                 GROUP and CONTEMPORARY
25                               SERVICES CORPORATION

26  13404294.4

                                 *****

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT