1   RUTAN & TUCKER, LLP
2   Milford W. Dahl, Jr. (State Bar No. 36796)
    mdahl@rutan.com
3   611 Anton Boulevard, Fourteenth Floor
    Costa Mesa, California 92626-1931
4   Telephone:   714-641-5100
    Facsimile:   714-546-9035
5   Attorneys for
6   Defendant Jeanette
    Johnson, individually
7   and as successor-in-
    interest to Jack Dahl

8
9              UNITED STATES DISTRICT COURT
10             CENTRAL DISTRICT OF CALIFORNIA
11

12  Executive Security Management, Inc.,     CASE NO. CV-09-09273-CAS(JEMx)
    dba The Apex Group; and
13  Contemporary Services Corporation,       Judge: Hon. Christina A. Snyder

14                 Plaintiff,
15  v.                                       **DEFENDANT JEANETTE
                                             JOHNSON'S NOTICE OF MOTION
16  Jack Dahl, and individual, Jeanette      AND MOTION FOR SUMMARY
    Johnson, in her individual capacity and  JUDGMENT**
17  as successor-in-interest to Jack Dahl,
    Populous Holdings, Inc., and HOK         Date:    October 24, 2011
18  Group, Inc.,                             Time:    10:00 a.m.
                                             Judge:   Hon. Christine Snyder
19                 Defendant.
20

21        TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:
22        PLEASE TAKE NOTICE that on October 24, 2011 at 10:00a.m., or as soon
23  thereafter as counsel may be heard in Courtroom 5, Second Floor of the above-
24  entitled Court located at 312 N. Spring Street, Los Angeles, California 90012
25  Defendants Jeanette Johnson, individually and as the alleged successor-in-interest
26  to Jack Dahl, will and hereby does move the Court pursuant to Fed. R. Civ. P. 56
27
28

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

1  for judgment in her favor on all claims and causes of action asserted against her by

2  Plaintiffs Executive Security Management, Inc., d/b/a The Apex Group ("Apex")

3  and Contemporary Services Corporation ("CSC") (Apex and CSC collectively are

4  "Plaintiffs") based on the fact that there are no genuine issues as to any material

5  fact and Johnson is entitled to judgment as a matter of law.  This Motion is made

6  following the teleconference among counsel located in various counties and states

7  pursuant to Central District Local Rule 7-3, which took place in part on June 23,

8  2011 and by subsequent correspondence.

9      This Motion is made on the following grounds, in part:

10     1.    Plaintiffs cannot present evidence to support and create a genuine issue

11 of material fact with respect to each elements of each of its causes of action against

12 Johnson.  *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210

13 F.3d 1099, 1103 (9th Cir. 2000) ("In order to carry its burden of production, the

14 moving party must either produce evidence negating an essential element of the

15 nonmoving party's claim or defense or show that the nonmoving party does not

16 have enough evidence of an essential element to carry its ultimate burden of

17 persuasion at trial.")

18     2.    With respect to Plaintiffs' First Cause of Action for Breach of

19 Fiduciary Duty against Johnson as the successor-in-interest to Dahl, Dahl's alleged

20 breach of fiduciary duties did not in any way cause the damages Plaintiffs claim.

21 Defendants' alleged breaches did not in a way cause Plaintiffs' former clients to

22 stop doing business with them.  Each of Plaintiffs' former clients has testified that it

23 stopped using Plaintiffs' services for reasons having nothing to do with the alleged

24 (but unsupportable) acts of Defendants.  Also, Dahl's actions as an officer and

25 director of Apex are protected by the business judgment rule, under which such

26 actions cannot form the basis for liability unless Plaintiffs' can prove that they had

27

28

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary
Judgment

absolutely no rational purpose and no potential benefit to Apex, or were intended to benefit Dahl personally to the detriment of Apex. *Lee v. Interinsurance Exchange*, 50 Cal. App. 4th 694, 711 (1996).

3. With respect to Plaintiffs' Second Cause of Action for Conversion, against Johnson as the successor-in-interest to Dahl, Defendants alleged conversion did not in any way cause the damages Plaintiffs claim. Defendants' alleged taking or disposition of Plaintiffs' property did not in a way cause Plaintiffs' former clients to stop doing business with them. Each of Plaintiffs' former clients has testified that it stopped using Plaintiffs' services for reasons having nothing to do with the alleged (but unsupportable) acts of Defendants.

4. Johnson is entitled to judgment on Plaintiffs' Third Cause of Action for Intentional Interference with Contract because the witness for The Yucaipa Companies, with whose contracts with Plaintiffs they contend Dahl and Johnson interfered, testified that Yucaipa terminated its contracts because one Apex employee complained that another pulled a knife on him, not for a any reason having anything to do with any alleged act by Dahl or Johnson.

5. Johnson is entitled to judgment on Plaintiffs' Fourth Cause of Action for Intentional Interference with Economic Expectancy, Plaintiffs cannot prove this cause of action because they cannot prove that any interference by Dahl or Johnson caused any damages to any relationship Plaintiffs had with any third party. Each of Plaintiffs former clients has testified that its decision to stop using Plaintiffs' services had nothing to do with the alleged acts of Dahl or Johnson.

6. Johnson is entitled to judgment on Plaintiffs' Sixth Cause of Action for alleged violations of the Computer Fraud and Abuse Act, 18 U.S.C. §1030, because Plaintiffs did not sustain a loss of $5,000 that they incurred as a result of

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

investigating or otherwise responding to the acts of Dahl or Johnson on which the claim is based, as required by 18 U.S.C. § 1030(a)(5)(b)(i).

7.    Johnson is entitled to judgment on Plaintiffs' Seventh Cause of Action for alleged violations of The Wiretap Act prohibiting interception of electronic communications, 18 U.S.C. § 2501 et seq.  Plaintiffs allege Dahl configured the settings in the email account of another Apex employee to forward to Dahl emails addressed to that employee.  This act does not constitute "interception" of a communication under The Wiretap Act.  *See Bunnell v. Motion Picture Association of America*, 567 F.Supp.2d 1148 (C.D. Cal. 2007) (causing another person's emails to be forwarded to the defendant does not halt their transmission to the intended recipient and thus does not constitute "interception" based on the ordinary meaning of "intercept," under the statute, and according to well-settled law); *see also Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir.2002) (for an electronic communication "to be 'intercepted,'" it must be acquired during transmission, not while it is in electronic storage).

8.    Johnson is entitled to judgment on Plaintiffs' Eighth Cause of Action for alleged violations of The Stored Communications Act.  That act prohibits, relevantly, obtaining electronic communications through unauthorized access to a facility through which electronic communication services is provided, or by exceeding one authority for access to such a facility. 18 U.S.C. § 2701 et seq.  According to Plaintiffs' Chief Information Officer, Dahl and Johnson were administrators of the Apex email accounts.  They thus had complete authority to access the facility through which Apex's emails were communicated and thus did not violate the Act.  Given Plaintiffs' admission that both Dahl and Johnson acted as administrators, they also cannot prove whether the alleged unauthorized access was committed by Dahl or Johnson.

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary Judgment

9.      With respect to Plaintiffs' Ninth Cause of Action for alleged violations of the California Business & Professions Code, section 17200 et seq., Plaintiff cannot prove any underlying violation of law and thus cannot prove any basis for liability under section 17200.  *Rivera v. BAC Home Loans Servicing, L.P.*, 756 F. Supp. 2d 1193, 1200-01 (N.D. Cal. 2010), ("Under the 'unlawful' prong, the UCL incorporates other laws and treats the violations of those laws as unlawful business practices independently actionable under state law. . . .Where a plaintiff cannot state a claim under the 'borrowed' law, however, he or she cannot state a UCL claim either.")

10.      Plaintiffs cannot recover the damages they claim because they cannot prove with reasonable certainty (i) that the events on which the profits are contingent would have occurred or (ii) the amount of profits that they would have earned even if the events were to have occurred.  *Kids' Universe v. In2Labs*, 95 Cal.App.4th 870, 883-84 (2002) (plaintiff must prove the occurrence and amount of future lost profits with reasonable certainty).

11.      Johnson is entitled to judgment on all of CSC's causes of action.  CSC has not identified a single act or damage that in any way supports any of the causes of action it has alleged.  The acts and damages alleged involve only Apex and do not involve CSC in any way.

The foregoing grounds are addressed in detail in the attached Memorandum of Points and Authorities.  This Motion is based on this Notice, the attached Memorandum of Points and Authorities, on the separate Statement of Uncontroverted Facts and Proposed Findings of Law submitted herewith, and on such other evidence and argument as may be presented to the Court by counsel for Populous and HOK at the hearing on this Motion.  Based on the foregoing listed grounds and their substance, Populous and HOK respectfully request that the Court

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary Judgment

enter judgment in their favor and against Plaintiffs on all claims and causes of action asserted against Populous and HOK in Plaintiffs' Second Amended Complaint and grant them such further and additional relief as is just and reasonable.

Dated:     August 5, 2011                    RUTAN & TUCKER, LLP


By:  /s/ Milford W. Dahl, Jr.
     Milford W. Dahl, Jr.
     Attorneys for Defendant
     Jeanette Johnson, individually and as
     alleged successor-in-interest to Jack
     Dahl

6

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary Judgment

1

## <u>TABLE OF CONTENTS</u>

2

Page

3   MEMORANDUM OF POINTS AND AUTHORITIES............................................1

I.      INTRODUCTION...............................................................................................1

4

5   II.     PLAINTIFF APEX CANNOT PROVE ITS FIRST CAUSE OF
        ACTION FOR BREACH OF FIDUCIARY DUTY.......................................3

6   III.    PLAINTIFFS CANNOT PROVE THEIR SECOND CAUSE OF
        ACTION FOR CONVERSION. .....................................................................7

7

8   IV.     PLAINTIFFS CANNOT PROVE THEIR THIRD CAUSE OF
        ACTION FOR INTENTIONAL INTERFERENCE WITH
9           CONTRACTS. ..................................................................................................10

10  V.      PLAINTIFFS CANNOT PROVE THEIR FOURTH CAUSE OF
        ACTION FOR INTENTIONAL INTERFERENCE WITH
11          PROSPECTIVE ECONOMIC EXPECTANCY. ...........................................12

12  VI.     PLAINTIFFS CANNOT PROVE THEIR SIXTH CAUSE OF
        ACTION FOR VIOLATION OF THE COMPUTER FRAUD AND
13          ABUSE ACT (18 U.S.C. § 1030). ................................................................14

14

15  VII.    PLAINTIFFS CANNOT PROVE THEIR SEVENTH CAUSE OF
        ACTION FOR VIOLATION OF THE WIRETAP ACT (18 U.S.C. §
16          2520)................................................................................................................15

17  VIII.   PLAINTIFFS CANNOT PROVE THEIR EIGHTH CAUSE OF
        ACTION FOR VIOLATION OF THE STORED
18          COMMUNICATIONS ACT (18 U.S.C. § 2707). .........................................18

19  IX.     APEX CANNOT PROVE ITS NINTH CAUSE OF ACTION FOR
        UNFAIR COMPETITION.............................................................................20

20

21  X.      PLAINTIFFS' FIRST, SECOND, FOURTH, AND NINTH CAUSES
        OF ACTION ARE PREEMPTED TO THE EXTENT THEY ARE
22          BASED ON THE ALLEGED USE OR DISPOSITION OF TRADE
        SECRETS. .......................................................................................................21

23

24  XI.     JOHNSON IS ENTITLED TO SUMMARY JUDGMENT BECAUSE
        THE LOST FUTURE PROFITS APEX SEEKS ARE TOO
25          SPECULATIVE. ...........................................................................................22

26  XII.    JOHNSON IS NOT LIABLE AS THE SUCCESSOR-IN-INTEREST
        TO DAHL..........................................................................................................23

27

28

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

XIII.   CONCLUSION ............................................................................................23

**Rutan & Tucker, LLP**
**611 Anton Boulevard, Fourteenth Floor**
**Costa Mesa, California 92626-1931**

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary
Judgment

1

2                    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

3      **I.    INTRODUCTION**

4              Jack Dahl and Jeanette Johnson formerly were employees of Plaintiffs Apex

5      and CSC, respectively.  Dahl and Johnson primarily worked together to provide

6      credentialing services to clients of Apex.  In February 2008, they left Apex and

7      CSC due to their mistreatment by Damon Zumwalt, the owner of CSC and Apex.

8      In March 2008, Dahl and Johnson became employees of Populous, an architecture

9      firm that provides services to many of the same clients Dahl and Johnson served,

10     including the largest client, the NFL Super Bowl.[1]

11             Plaintiff Apex's claims basically are that they lost all of their credentialing

12     clients to Populous because Dahl and Johnson took confidential information of

13     Apex and provided it to Populous to use to solicit Apex's credentialing clients.

14     Plaintiffs also claim the Apex clients stopped using Apex because Dahl and

15     Johnson made disparaging statements to the clients about Zumwalt and the

16     companies.  Plaintiffs make the same claims against Populous that they make

17     against Johnson, alleging Populous is liable for the profits Apex lost based on the

18     alleged acts of Dahl and Johnson.[2]

19             Johnson has no idea of the basis for CSC's claims in this case.  More than

20     three years into this litigation, CSC has not identified a single act of Dahl or

21     Johnson that could give rise to liability, has not identified a single damage that it

22     ───────────────────

23     [1] "Populous" refers herein to both defendant Populous Holdings, Inc. and its predecessor HOK
       Sports Facilities Group, LLC.  Defendant HOK Group, Inc. is a different entity.  Until December
24     31, 2008, HOK Sports was a subsidiary of HOK Group, but at that point it was sold and on March
       31, 2009 changed its name to Populous.  These facts all are presented in Populous's
25     Memorandum at Section VIII, pp. 23-24, discussing Apex's alter ego claim.
       [2] Jack Dahl died in January 2009 and thus no longer should be a defendant in this case.  Plaintiffs,
26     however, continue to pursue the claims against him as though he still was a defendant, and even
       though they sought and obtained leave to add claims against Johnson and various Doe defendants
27     as successors-in-interest to Dahl.  *See* Doc. #27, Plaintiffs' SAC, Tenth Cause of Action, p. 29.

28
Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

1   allegedly sustained, or otherwise provided any information about its claims or the

2   bases therefore.  All of the allegations about property converted, clients solicited,

3   damages sustained, and other claims relate exclusively to Apex.  Counsel for

4   Populous specifically asked CSC to answer the discovery requests propounded to it

5   separately from Apex so defendants could understand CSC's claims.  CSC,

6   however, refused to answer the discovery separately.  In fact, CSC's counsel in

7   justifying his refusal said it would be unnecessary to respond separately because

8   CSC is not claiming any damages against Populous or HOK.  (Leitch Decl., ¶ 28,

9   Ex. AA). This does not explain, however, CSC's justification for not providing

10  information about its claims **against Johnson** for use by her and her counsel.

11         Because the claims against Johnson and those against Populous are, for the

12  most part, based on the same acts and claim the same damages, the issues and

13  evidence largely will be the same.  Particularly, the evidence regarding the most

14  important issue will be identical, that issue being why Apex's former clients

15  became clients of Populous.  To avoid a repetitious presentation of evidence and

16  arguments, Johnson incorporates herein by this reference the Memorandum of

17  Points and Authorities filed by Populous and HOK in support of their Motion for

18  Summary Judgment (hereafter "Populous's Memorandum" or "Pop.'s Memo.").  In

19  the discussion below of Plaintiffs' claims, Johnson refers to specific sections and

20  pages of Populous Memorandum at which specific issues and evidence are

21  discussed, particularly the evidence as to why Apex's former clients became

22  Populous's clients.  In summary on this key point, **every** client that Apex claims

23  left it due to alleged wrongful acts of Dahl, Johnson, or Populous has testified that

24  Apex's claims are not correct and that they left for reasons having nothing to do

25  with the facts Apex alleges.

26         In the discussion of Plaintiffs' claims, Johnson also will refer to key facts set

27

28

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary
Judgment

out in her Separate Statement of Facts and Conclusions of law, even though the Populous Memorandum cites and discusses the same facts and evidence from Populous's Separate Statement of Facts and Conclusions of law.[3]

## II.    PLAINTIFF APEX CANNOT PROVE ITS FIRST CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY.

Apex has asserted a cause of action for breach of fiduciary duty against Johnson as the successor-in-interest to Dahl, and based solely on the actions of Dahl. *See* Ptfs.' Second Amended Complaint ("Doc. #27, Ptfs.' SAC"), First Cause of Action, pp. 12-13.  To establish a cause of action for breach of fiduciary duty, Apex must prove:  1) the existence of a fiduciary duty; 2) a breach of the fiduciary duty; and 3) damage caused by the breach.  *Pellegrini v. Weiss*, 165 Cal. App. 4th 515, 524 (2008).  Apex cannot prove this cause of action against Dahl and thus cannot establish liability as to Johnson as the successor-in-interest to Dahl.

Apex alleges Dahl breached his fiduciary duty by interfering with Apex's relationships with its clients while he was an officer and director of Apex. *See* Doc. #27, Ptfs.' SAC, pp. 12-13, ¶ 49.  Apex also alleges that Dahl used confidential information of Apex to set up a competing business. *Id.*, ¶ 50.  And Apex claims that as a result, it lost revenues from former clients (the NFL, NCAA Final Fours, PGA, Yucaipa, and NCAA Bowls) and from the undefined and unidentified "Other Credentialing," "Adventous," and "Other Apex Divisions."  (Leitch Decl., ¶ 30, Ex. CC, Plaintiffs' Supplemental Responses to Defendant Jeanette Johnson's Special Interrogatory Nos. 36 and 37 ("Ptfs.' Supp. Resp. to Johnson's Ints."), No. 36, p. 2:14-24).  Apex also claims it incurred damages of increased labor costs for the

---

[3] Although Johnsons's and Populous's Separate Statements of Fact are identical, Johnson has submitted her Statement separately due to the express requirement of L.R. 56-1.  Johnson's conclusions of law also differ from Populous's Conclusions because different causes of action are asserted against the different defendants.

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California  92626-1931

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary Judgment

1   2007 and 2008 Super Bowls and extra equipment costs.  *Id.*, p. 2:24-26.[4]

2       As is shown in Populous's Memorandum, Apex's clients did not stop using

3   Apex due to Dahl's alleged solicitations or interferences; each stopped for reasons

4   having nothing to do with Dahl's alleged actions. *See* Pop.'s Memo., Sec. III, pp. 6-

5   20.  *See also* SUF ¶¶ 10-14 (NFL); 39-43, 49 (NCAA Men's Final Four); 61, 63-65,

6   67 (NCAA Women's Final Four); 82-85 (PGA); and 94-96 (Yucaipa).  Apex

7   simply has no evidence that it lost profits as a result of any alleged breaches of

8   Dahl's fiduciary duties.

9       In fact, in direct contradiction to this claim, Apex alleges Dahl interfered

10  with its relationships with **these exact clients**, not while an employee of Apex, but

11  while an employee of Populous (*see* Doc. #27, Ptfs.' SAC, pp. 20-23, Fifth Cause

12  of Action), which did not begin until March 13, 2008 (SUF ¶ 6).  Apex alleges Dahl

13  caused all of **these identical damages** through those acts on behalf of Populous.

14  Leitch Decl., ¶ 25, Ex. X (Plaintiffs' [Second] Supplemental Response to

15  Populous's Interrogatories 12, 15, 16, and 18 (hereafter "Ptfs.' **Second** Supp. Resp.

16  to Populous's First Ints."), No. 16, pp. 4-5).[5]

17  ─────────────────

18  [4] Counsel for Johnson are unfortunately required to refer back and forth between (i) "Apex's
    Supplemental Response to Populous's First Interrogatories" (at Leitch Decl., ¶ 24, Ex.W), and (ii)

19  "Apex's Supplemental Response to Populous's Interrogatories 12, 15, 16 and 18" (at Leitch
    Decl., ¶ 25, Ex. X) because Plaintiffs did not serve a document that contains their entire answers

20  to the interrogatories.  Hereafter, the first supplement is referred to as "Leitch Decl., ¶ 24, Ex.W,
    Ptfs.' First Supp. Resp. to Pop.'s Ints.," and the second supplement is referred to as "Leitch Decl.,

21  ¶ 25, Ex. X, Ptfs.' Second Supp. Resp. to Pop.'s Ints."  The same problem exists regarding
    Plaintiffs' responses to Johnson's interrogatories and their supplement of those responses.

22  Plaintiffs' responses to Johnson's interrogatories are cited as "Leitch Decl., ¶ 26, Ex.Y, Ptfs.'
    Resp. to Johnson's Ints." and "Leitch Decl., ¶ 30, Ex.CC, Ptfs' Supp. Resp. to Johnson's Ints."

23

24  [5] As the Court has seen in Populous's Memorandum and will see further below, this is only one
    of many examples of instances in which Plaintiffs simply have lumped their allegations of facts,

25  defendants, damages, and other parts of claims together without any effort to identify what acts
    allegedly were committed by what defendant and caused what damages with respect to which

26  Plaintiff or related to which third party.  Plaintiffs' practice in this respect has made the briefing
    of these issues much more complicated that it would have been if Plaintiffs properly had

27

28

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California  92626-1931

─────────────────

4

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary
Judgment

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

1       Apex also alleges that Dahl, while still with Apex, solicited Apex's

2 employees to go to work for Dahl in a different business.  *See* Doc. #27, Ptfs.'

3 SAC, p. 6, ¶ 24.  After more than three years of this litigation, however, in answer

4 to an interrogatory asking Apex to identify those employees, Apex identified

5 various people "on information and belief" as it did more than 70 other times in

6 those responses.  *See* Leitch Decl., ¶ 26, Ex. Y, Ptfs.' Resp. to Johnson's Ints., No.

7 6, p. 7:12-20.  But Apex has not produced, and cannot present, any evidence of

8 these alleged solicitations.  Apex also does not have any evidence as to **when** Dahl

9 allegedly solicited these employees, and thus cannot prove that it occurred while

10 Dahl owed any duty to Apex.  Finally, Apex cannot prove that any alleged

11 solicitation of its employees caused any of the damages it claims.  In fact, Apex

12 does not even claim any damages that relate to the solicitation of employees.  *Id.*,

13 No. 36, pp. 32-33.

14       Apex also claims Dahl used Apex's money to pay unauthorized bonuses to

15 employees to gain their loyalty for his own benefit and to the detriment of Apex.

16 *See* Doc. #27, Ptfs.' SAC, p. 13, ¶ 51.  Dahl, however, was a shareholder, director,

17 and officer of Apex, and was responsible for the Accreditation [credentialing]

18 division.  *Id.*, p. 5, ¶ 13.  Therefore, even assuming *arguendo* that Dahl made the

19 alleged payments, he had the discretion to pay the employees as he believed was in

20 the best interests of the company and his decision to do so is not subject to second-

21 guessing by Apex or the Court based on the business judgment rule recognized by

22 California courts:

23       The business judgment rule is "a judicial policy of deference to the

24       business judgment of corporate directors in the exercise of their broad

25

26 identified the respective components of its causes of action and the damages allegedly caused
27 thereby, as specifically requested in discovery.  *See*, *e.g.*, Pop.'s Memo., Sec. ___, pp. ____.

28

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary
Judgment

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

1   discretion in making corporate decisions."  The rule is based on the
2   premise that those to whom the management of a business
3   organization has been entrusted, and not the courts, are best able to
4   judge whether a particular act or transaction is helpful to the conduct
5   of the organization's affairs or expedient for the attainment of its
6   purposes.  The rule establishes a presumption that directors' decisions
7   are based on sound business judgment, and it prohibits courts from
8   interfering in business decisions made by the directors in good faith
9   and in the absence of a conflict of interest.

10  *Lee v. Interinsurance Exchange*, 50 Cal. App. 4th 694, 711 (1996).  *See also*
11  *McMichael v. U.S. Filter Corp.*, 2001 U.S. Dist. Lexis 3918, *31-32 (C.D. Cal.)
12  (the rule "posits a powerful presumption in favor of actions taken by the directors in
13  that a decision made by a loyal and informed board will not be overturned by the
14  courts unless it cannot be attributed to any rational business purpose").  The rule
15  also applies to protect officers:  "If the plaintiff cannot overcome the presumption,
16  the business judgment rule attaches **to protect corporate officers** and directors and
17  the decisions they make, and courts hesitate to second-guess such decisions."
18  *McMichael*, 2001 U.S. Dist. Lexis at *31-32 (emphasis added).

19      Apex does not have any evidence that Dahl did not believe any such alleged
20  payments were in the best interests of the company.  Unless Apex can prove that
21  fact and that the payments had absolutely no rational purpose and no potential
22  benefit to Apex, or were intended to benefit Dahl personally to the detriment of
23  Apex, it cannot establish a breach of fiduciary duty.  *Id.*  Apex also cannot show
24  that it sustained any of the damages it claims as a result of the overpayments.
25  Plaintiffs cannot prove the overpayments or damages because, among other
26  reasons, they refused to produce documents related to the alleged overpayments in

27

28

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

1  discovery that Johnson would need to defend against this claim, objecting that,

2  among other things, the documents are not relevant.  *See* Leitch Decl., ¶ 27, Ex. Z,

3  Ptfs.' Resp. to Pop.'s Fifth Doc. Reqs., Nos. 154 – 158, pp. 2-4.  Plaintiffs thus

4  should be precluded from offering their evidence on this claim or this claim should

5  be dismissed.

6      Finally, Apex contends Dahl converted some unspecified amount of Apex

7  money for his personal use.  Doc. #27, Ptfs.' SAC, ¶ 51, p. 13:14-16.  Apex,

8  however, has absolutely no evidence to support this allegation.[6]

9  **III.   PLAINTIFFS CANNOT PROVE THEIR SECOND CAUSE OF**

10  **ACTION FOR CONVERSION.**

11      To prove a cause of action for conversion, Plaintiffs must prove:  (1)

12  Plaintiffs' ownership or right to possession of tangible property at the time of the

13  alleged conversion; (2) Defendants' wrongful taking or disposition of the property;

14  and (3) resulting damage.  *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser,*

15  *Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 395 (2007).  Plaintiffs cannot prove a

16  cause of action against Johnson for conversion because they cannot present any

17  evidence that Dahl or Johnson wrongfully took or disposed of any tangible property

18  that belonged to Plaintiffs or that Plaintiffs sustained any damages as a result.

19  Further, due to Plaintiffs refusals to respond properly to discovery, it is unclear

20  whether Dahl and Johnson are alleged to have taken Apex's property, CSC's

21  property, or both or which one of them is alleged to have taken what property.

22  _____

23  [6] This is a perfect example of why Apex is required to present evidence to support its causes of
   action in response to this Motion as opposed to Johnson having to disprove the claims.  *See*

24  *Nissan Fire*, 210 F.3d at 1103.  Mr. Dahl died in 2009 and was never deposed or otherwise given
   a chance to respond to the unsupported allegations against him.  Johnson obviously cannot prove

25  a negative.  Apex should not be able to get past summary judgment and cause Johnson the burden
   and expense of a trial unless it presents evidence at this time to establish a genuine issue of fact as

26  to its allegations of Dahl's breaches of fiduciary duties and the damages it claims to have
   sustained as a result.

27

28

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary
Judgment

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

Plaintiffs allege that Dahl **and** Johnson converted property of Apex, including unspecified data, files, contracts, thumb drives, hard drives, money, and other items.  *See* Doc. #27, Ptfs.' SAC, p. 13-14, ¶ 55.  Plaintiffs, however, have no evidence to support this allegation.  Johnson served an interrogatory on Plaintiffs asking them to identify "by item, and date of purchase and value each item of property that you contend defendants converted."  Leitch Decl., ¶ 26, Ex. Y, Ptfs. Resp. to Johnson's Ints., No.49, pp. 42.  Consistent with Plaintiffs' practice of lumping their claims and the defendants together, Plaintiffs contend that Dahl and Johnson both converted the very same property.  *Id.*, pp. 42-45.  And in every paragraph except one purporting to identify property, Plaintiffs' answered: "Plaintiffs are informed and believe that Dahl and Johnson … ."  Three years after Plaintiffs filed this litigation, they still cannot present any evidence to support their claims and continue to allege in almost every instance "on information and belief." In reality, Plaintiffs cannot prove that either Johnson or Dahl converted property, but certainly cannot prove specifically who converted what specific property. Without such evidence, Plaintiffs cannot prove this cause of action.

Plaintiffs also do not have any evidence to support their contention that "Johnson and Dahl also converted money to their own use … ."  *Id.*, p. 45:7. Again, Plaintiffs simply lump Johnson and Dahl together as though they are a single person who took Plaintiffs' unspecified collective property.   Without evidence of which defendant converted what specific money to his or her own benefit, Plaintiffs cannot prove their cause of action against **either** Dahl or Johnson. *In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, 505 F. Supp. 2d 609, 619 (N.D. Cal. 2007) (a cause of action for conversion of money will stand only if it is for "a specific, identifiable sum is at issue").

As with the breach of fiduciary duty claim, Plaintiffs allege Dahl and

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary Judgment

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California  92626-1931

Johnson converted moneys of Apex by overpaying employees without authorization.  Plaintiffs, however, have not produced evidence as to whether Dahl or Johnson committed the alleged acts of overpayments or specified who overpaid what person by what amount; as with their other claims, they allege "Plaintiffs are informed and believe, and on that basis allege, that Defendants **Dahl and Johnson** converted a portion of this money for their own purposes."  *See* Doc. #27, Ptfs.' SAC, ¶ 25, p. 8:15-17.  Plaintiffs also have not presented any explanation, or more importantly evidence, as to how Dahl or Johnson benefited themselves by allegedly overpaying employees or otherwise converted Plaintiffs', or which one's, assets in this respect.[7]

Further, and as indicated above, Dahl was a shareholder, director, and officer of Apex, and was responsible for the credentialing division. *Id.*, 13.  He thus had the authority and discretion to pay employees as he believed was in the best interests of the company. *See Lee v. Interinsurance Exchange*, 50 Cal. App. 4th at 711; and *McMichael*, 2001 Lexis 3918 at *31-32, quoted *supra* at 5-6.  Therefore, such payments, even assuming they were made, would not be a conversion of Apex's money.

Plaintiffs allege that the conversion caused them to lose profits from the NFL, PGA, and NCAA, and from Yucaipa.  As established in Populous's Memorandum, however, each of those entities testified that they stopped working with Apex for reasons having nothing to do with any act of Dahl or Johnson. *See* Pop.'s Memo., pp. 6-20. *See also* SUF ¶¶ 10-14 (NFL); 39-43, 49 (NCAA Men's

---

[7] Note also that the allegations that Dahl **and** Johnson converted the same moneys by overpaying employees is contrary to the allegation that Plaintiffs suffered the exact same damages by Dahl, **alone**, breaching his fiduciary duty in this respect.  Plaintiffs simply cannot prove these causes of action and thus are just making baseless allegations in hopes something will stick.  The time for allegations long has passed; Plaintiffs now must produce evidence.

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary Judgment

Final Four); 61, 63-65, 67 (NCAA Women's Final Four); 82-85 (PGA); and 94-96 (Yucaipa).  Plaintiffs also claim damages from the alleged conversion from lost revenues from the unspecified clients that must make up "Other Credentialing Work," "Adventous," and "Other Apex Divisions."  As also shown in Populous's Memorandum, however, Plaintiffs have refused to provide any evidence at all related to these claimed losses, and are precluded from doing so at this late date or at trial.  *Dey, L.P. v. Ivax Pharmaceuticals, Inc.*, 233 F.R.D. 567, 571 (C.D. Cal. 2005) (court may exclude evidence that a party does not disclose in discovery).

Plaintiffs' three-year practice of alleging "on information and belief" and making generalized allegations against defendants as a group as opposed to providing facts and evidence must end.  Plaintiffs finally must specify their claims and provide evidence to support them.  *Nissan Fire*, 210 F.3d at 1103.

## IV.   PLAINTIFFS CANNOT PROVE THEIR THIRD CAUSE OF ACTION FOR INTENTIONAL INTERFERENCE WITH CONTRACTS.[8]

California law requires Plaintiffs to prove the following elements to establish liability on a cause of action for intentional interference with contract:  (i) a valid contract between Plaintiffs and a third party; (ii) Dahl's or Johnson's knowledge of the contract; (iii) Dahl's or Johnson's intentional acts designed to induce a breach of disruption of the contract; (iv) actual breach or disruption of the contractual relationship due to the intentional acts; and (v) damages to Plaintiffs resulting from the breach or disruption.  *See Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50

---

[8] Plaintiffs have dismissed their Third Cause of Action with respect to all third parties other than Yucaipa because it did not have contracts with the other third parties, but only alleged relationships from which they expected future economic benefits.  As with CSC's claims generally, it remains unclear why CSC ever asserted or continues to assert this cause of action given the fact that it is not a party to the contracts at issue between Apex and Yucaipa.  *See* Leitch Decl., ¶¶ 21, Ex. T (contract between Apex and LJRFP, LLC ) and 22, Ex. U (contract between Apex and The Yucaipa Companies).

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California  92626-1931

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary Judgment

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

Cal. 3d 1118, 1126 (1990); and *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998).  Plaintiffs have no evidence that Dahl or Johnson caused any breach or disruption of Plaintiffs contract with any third party.

While Plaintiffs allege this cause of action against Dahl **and** Johnson (*see* Doc. #27, Ptfs.' SAC, p. 16), they contend in their answer to an interrogatory regarding this cause of action only that Dahl allegedly interfered with their contracts with Yucaipa by making disparaging remarks to Yucaipa's Frank Renzi about Zumwalt, Apex, and CSC; Plaintiffs do not mention Johnson in their answer to this interrogatory.  *See* Leitch Decl., ¶ 24, Ex. W, Ptfs.' First Supp. Resp. to Populous's Ints., No. 6, p. 17:12-18.  Regardless, Populous's Memorandum demonstrates that Plaintiffs' contention is wrong.  As Populous demonstrates, Mr. Renzi did not make the decision to terminate the contracts; Yucaipa's Ron Burkle made the decision for reasons having nothing to do with any alleged representations to Renzi, but due to various incidents culminating in one Apex employee claiming that another Apex employee pulled a knife on him.  *See* Pop.'s Memo., Sec. III.D, p. 16-17.  *See also* SUF ¶¶ 94-96.  In fact, there is not any evidence that Dahl or Johnson ever spoke to Mr. Burkle.  And while Renzi denied that Dahl made any such disparaging statements to him, he testified unequivocally that he did not relate any such statements to Mr. Burkle, who made the decision to terminate Apex's contract.  SUF ¶ 98.

Yucaipa did not terminate its contracts with Apex as a result of any alleged interference therewith by Dahl **or** Johnson.  Johnson thus is entitled to judgment in her favor on Plaintiffs' Third Cause of Action against her.

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

**V.   PLAINTIFFS CANNOT PROVE THEIR FOURTH CAUSE OF ACTION FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC EXPECTANCY.[9]**

Plaintiff alleges that Dahl intentionally interfered with Plaintiffs' relationships with the exact same entities with which it alleges Populous interfered, and Plaintiffs claim the exact same damages that they claim against Populous (these being the identical damages Plaintiffs also claim based on the causes of action for Dahl's breach of fiduciary duty and the alleged conversion by all defendants). Populous's Memorandum establishes, however, that Plaintiffs cannot establish a cause of action for intentional interference with economic expectancy for various reasons, either with respect to the third parties Plaintiffs have identified (the NFL, PGA, NCAA, and Yucaipa) or the mystery relationships (unidentified NCAA Bowl Games, Other Credentialing, Adventous, and Other Apex Divisions).[10]

Populous's Memorandum establishes that the NFL, PGA and NCAA and Yucaipa terminated their relationships with Plaintiffs (actually just Apex) for reasons that had nothing to do with any act by Jack Dahl.  Pop.'s Memo., Sec. III.A-D., pp. 6-17.  *See also* SUF ¶¶ 10-14 (NFL); SUF ¶¶ 39-43, 49 (NCAA Men's Final Four); SUF ¶¶ 61, 63-65, 67 (NCAA Women's Final Four); SUF ¶¶ 82-85 (PGA); and SUF ¶¶ 94-96 (Yucaipa).  Populous's Memorandum also establishes that after Dahl and Johnson left Plaintiffs, they no longer had had relationships with

---

[9] Plaintiffs allege this cause of action only against Johnson as the successor-in-interest to Dahl, and not against Johnson in her individual capacity, and thus the claim is based only on the alleged actions or statements of Dahl.

[10] While Populous's Memorandum is addressed only to Apex's claims, the arguments therein apply equally to CSC because CSC, like with its other claims, does not identify any clients or relationships it had with any third parties, identify any alleged interference by Dahl with any relationships, or identify any damages that it sustained, all of which again begs the question of why CSC asserted and is maintaining this cause of action.

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary Judgment

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

the NFL or NCAA from which they probably would have received the revenues and profits that they claim to have lost.  Pop.'s Memo., Sec. III.A.2., p. 9 (NFL); Sec. III.B.1.b., p. 11 (NCAA Men's); and III.B.2.b., p. 13 (NCAA Women's).  *See also* SUF ¶¶ 18, 23, 26-27, 29-30 (NFL); SUF ¶¶ 36, 41-42, 49, 54-56 (NCAA Men's Final Four); SUF ¶¶ 36, 69, 70 (NCAA Women's Final Four).

Populous's Memorandum also demonstrates with respect to Plaintiffs claims for lost revenues with respect to NCAA Bowl Games, Other Credentialing, Adventous, and Other Apex Divisions that Plaintiff refused to provide any information in discovery about those relationships, the purported clients, how any defendants allegedly interfered with them, the bases for Plaintiffs' claimed expectations of future profits, or any other information about them.  *See* Pop.'s Memo., Sec. III.E., pp. 17-20.  Plaintiffs thus would be precluded from offering evidence of those facts at trial, even assuming they had such evidence.. *Dey, L.P. v. Ivax Pharmaceuticals, Inc.*, 233 F.R.D. 567, 571 (C.D. Cal. 2005) (court may exclude evidence that a party does not disclose in discovery).

In addition to Plaintiffs' allegations as to how all of the defendants interfered with their relationships, Plaintiffs also allege, on information and belief, that Dahl interfered with their relationship with the NFL by denying Zumwalt access to the credentialing offices for Super Bowl XLII (2008).  *See* Leitch Decl. ¶ 24, Ex. W, Ptfs.' First Supp. Resp. to Populous's Ints., No. 12, p. 26:7-9.[11]  With respect to this allegation, after the 2008 Super Bowl, the NFL's Frank Supovitz decided the NFL would invite various companies to bid on the 2009 Super Bowl credentialing contract, but would not invite Apex.  SUF ¶¶ 10-14, 21-22.  Mr. Supovitz thereby terminated any relationship Apex could claim to have had with the NFL.  Mr.

---

[11] The other alleged ways Plaintiffs allege Dahl and Johnson interfered with their relationships, as set out in answer to Int. No. 12, are the same as those alleged with respect to Populous and are addressed in its Memorandum at the pages indicated above.

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary Judgment

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

Supovitz, however, testified that he had never even heard that Zumwalt was denied access to the credentialing center.  SUF ¶ 19.  This alleged denial thus could not have had anything to do with Mr. Supovitz's decision.  And in fact, Zumwalt was not denied access to the credentialing center.  SUF ¶ 20.

Given the foregoing, Plaintiffs cannot present evidence that supports, or that establishes a genuine issue of material fact regarding, their claim of intentional interference with economic expectancy against Johnson based on any actions of Dahl or otherwise.

## VI.   PLAINTIFFS CANNOT PROVE THEIR SIXTH CAUSE OF ACTION FOR VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030).

Plaintiffs allege a cause of action against Dahl and Johnson under the Computer Fraud and Abuse Act ("CFAA"), specifically 18 U.S.C. § 1030(a)(5)(A)(i).  *See* Doc. #27, Ptfs.' SAC, Sixth Cause of Action, p. 23:18-21.  To prove that cause of action, Plaintiffs must prove that Dahl and Johnson "knowingly caus[ed] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caus[ed] damage without authorization, to a protected computer."  18 U.S.C. § 1030(a)(5)(A)(i).  Plaintiffs cannot prove this cause of action because they have not produced evidence to support the elements of this claim.

The CFAA is primarily a criminal statute.  Subsection (g), however,  allows a party to maintain a civil action for a violation only if the conduct involves one of the factors set subsection (a)(5)(B).  For Plaintiffs to prove their claim under section (a)(5)(b)(i), they must prove that they incurred a loss of more than $5,000 responding to the acts they allege Dahl and Johnson committed in violation of the act.  18 U.S.C. § 1030(a)(5)(b)(i).  Plaintiffs were asked to produce documentation

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary Judgment

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

to substantiate this loss.  *See* Leitch Decl., ¶ 27, Ex. Z, Ptfs.' Resp. to Pop.'s Fifth Doc. Reqs., No. 163, p. 5:23-26.  Plaintiffs, however, refused to produce any documents showing any losses they incurred, arguing that "the request calls for documents that are not relevant to the litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs' subsequent remedial measures, if any, are not relevant."  *Id.*, p. 6:2-7.  Because Plaintiffs have refused to produce evidence in discovery on this point, they would be precluded from introducing it at trial and thus cannot prove this cause of action.  *See Dey*, 233 F.R.D. at 571.[12]

Plaintiffs also cannot establish who, Dahl or Johnson (even assuming *arguendo* it was one of them), committed the acts Plaintiffs allege.  To date, Plaintiffs, as is their practice, have simply alleged Dahl **and** Johnson committed acts collectively without specifying which of them allegedly did what.  At this time, however, Plaintiffs must do more than make allegations; they must present evidence of which defendant committed what act that violated the CFAA.

## VII.  PLAINTIFFS CANNOT PROVE THEIR SEVENTH CAUSE OF ACTION FOR VIOLATION OF THE WIRETAP ACT (18 U.S.C. § 2520).

Plaintiffs Seventh Cause of Action alleges that Dahl and Johnson violated the provisions of The Wiretap Act prohibiting the interception of electronic communications.  *See* Doc. #27, p. 25.  To establish this cause, Plaintiffs must prove Dahl and Johnson "intentionally intercept[ed], endeavor[ed] to intercept, or procure[d] any other person to intercept or endeavor to intercept any wire, oral, or

---

[12] Plaintiffs actually did not even plead that they had incurred losses as a result of the actions alleged under this cause of action.  *See* SAC, Doc. #27, ¶¶ 102-112.  Plaintiffs simply seek unspecified damages in excess of $1,000,000.  *Id.*, p. 24:15-17.

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

1   electronic communication[.]"  18 U.S.C. § 2511(1)(a).[13]  For this cause of action,

2   Plaintiffs assert:

3          Johnson and/or Dahl are believed to have configured email settings

4          such that copies of emails not intended for their eyes were sent to their

5          email accounts.   Dahl and Johnson had access to user ID's and

6          passwords that enabled them to intercept emails that they were not

7          authorized to access.

8   *See* Leitch Decl. ¶ 26,  Ex. Y, Ptfs.' Resp. to Johnson's Ints., No. 32, pp. 27:26-

9   28:2.

10        Even if Plaintiffs' could support their belief with evidence, the acts they

11   assume occurred do not violate The Wiretap Act.  Under that statute, forwarding

12   copies of email or causing copies to be forwarded is not an "interception" as

13   required to establish a violation.  *See Bunnell v. Motion Picture Association of*

14   *America*, 567 F. Supp. 2d 1148 (C.D. Cal. 2007).  In *Bunnell*, a case almost

15   identical factually to this one, the court specifically rejected Plaintiffs' email-

16   forwarding theory and granted summary judgment to the defendant stating:

17          Neither party disputes that [defendant] Anderson configured the "copy

18          and forward" function on Plaintiffs' email server so that he would

19          receive copies of all Plaintiffs' emails in his Google email account.

20          …

21          Anderson did not stop or seize any of the messages that were

22          forwarded to him.  Anderson's actions did not halt the transmission of

23          the messages to their intended recipients.  As such, under well-settled

24          case law, as well as a reading of the statute and the ordinary meaning

25

26   [13] Plaintiffs' cause of action references 18 U.S.C. § 2520, which authorizes a civil action under

27   The Wiretap Act.  Section 2511, 18 U.S.C., referenced herein, outlines the acts that violate the
Act and that must be proven to establish a civil claim under section 2520.

28

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary
Judgment

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

1    of the word "intercept," Anderson's acquisition of the emails did not

2    violate the Wiretap Act.

3    *Id.* at 1154.  *See also Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir.

4    2002) (for an electronic communication to be "intercepted" in violation of the

5    Wiretap Act, it must be acquired during transmission, not while it is in electronic

6    storage); and *Theofel v. Farey-Jones*, 341 F.3d 978, 986 (9th Cir. 2003) ("the

7    district court correctly dismissed the claim" under the Wiretap Act arising from

8    disclosure of e-mails previously sent and received).

9          Even if Plaintiffs' contention that Dahl caused the email to be forwarded to

10   himself were considered an interception, however, Plaintiffs' Chief Information

11   Officer, Abraham Kumar, admitted that they could not prove their contention.  In

12   discovery, Plaintiffs described (but did not produce) a single email that Dahl

13   allegedly obtained from another email user.  See Leitch Decl. ¶ 26, Ex. Y, Ptfs.'

14   Resp. to Johnson's Ints., No. 32, p. 28:9-10.  With respect to Plaintiffs' theory

15   about Dahl getting the email, however, Kumar testified:

16         Q. How do you know how Mr. Dahl got a copy of that E-mail?

17         A. The only way Mr. Dahl could have gotten the copy of the E-mail

18             was because Mr. Dahl was the administrator and he administered all of

19             Apex's E-mails.  He controlled the username, passwords and he could

20             – he had to have forwarded Rob Brockaway's E-mails to himself.

21         …

22         Q.  Did you -- upon learning that Jack, as you say, had this E-mail, did

23             you do anything to investigate or determine if anyone had set up the

24             Apex E-mail system so that would it forward to Jack Dahl E-mails

25             intended for somebody else?

26         A.   I could not immediately because I did not have access to the E-

27

28

                                          17

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary
Judgment

1      mail system for Apex.  And later on, we tried to investigate but I guess

2      the name stamping only stays on so long.  **So we were not able to**

3      **verify anything.**

4  Leitch Decl. ¶ 29, Ex. BB, Kumar Dep., tr. 245:14-21; and 246:14-23 (emphasis

5  added).

6      In addition to Plaintiffs not having any evidence to support their theory, even

7  if they had any such evidence, they obviously cannot establish specifically who,

8  Dahl or Johnson, committed the alleged acts on which they base their claim.

9  Without such evidence, Plaintiffs cannot establish their claim against either of Dahl

10  or Johnson.   As indicated above, Plaintiffs cannot simply continue to lump

11  defendants, claims, damages and other elements together and hope something

12  shakes out.  They now must present specific evidence that could establish its causes

13  of action against each specific defendant on each cause of action alleged.  *See*

14  *Nissan Fire*, 210 F.3d at 1103.

15      Plaintiffs clearly cannot present evidence to support their claim that Dahl or

16  Johnson violated The Wiretap Act or to create a genuine issue of material fact with

17  respect to the elements of that claim on which Plaintiffs bear the burden of proof at

18  trial.

19  **VIII.  PLAINTIFFS CANNOT PROVE THEIR EIGHTH CAUSE OF**

20          **ACTION FOR VIOLATION OF THE STORED COMMUNICATIONS**

21          **ACT (18 U.S.C. § 2707).**

22      Plaintiffs' Eighth Cause of Action alleges that Dahl and Johnson violated the

23  following provisions of the Stored Communications Act:

24      (a) Offense.   Except as provided in subsection (c) of this section,

25      whoever

26          (1)  intentionally accesses **without authorization** a facility

27

28                                      18

*Rutan & Tucker, LLP*
*611 Anton Boulevard, Fourteenth Floor*
*Costa Mesa, California 92626-1931*

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary
Judgment

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

1    through which an electronic communication service is provided;

2    or

3    (2) intentionally **exceeds an authorization** to access that

4    facility;

5    and thereby obtains, alters, or prevents authorized access to a wire or

6    electronic communication while it is in electronic storage in such

7    system shall be punished as provided in subsection (b) of this section

8    18 U.S.C. § 2701(a) (emphasis added).

9        Plaintiffs allege that "Defendants Dahl and Johnson accessed a facility

10   through which Plaintiffs' electronic communication service is provided" but

11   "Defendants Dahl and Johnson were not authorized to access the facility." *See*

12   Doc. #27, Ptfs.' SAC, ¶¶ 124 and 125.  Even if Plaintiffs could establish a facility,

13   access, and electronic storage, which they cannot, the testimony of Plaintiffs' CIO

14   Kumar defeats this cause of action.  Mr. Kumar testified:

15   A. Well, this was Earthlink's business E-mail system which Apex used

16   and Jeanette [Johnson] and Jack [Dahl], they were both admins

17   [administrators].  The[y] were the ones who created it, deleted and

18   managed those E-mail accounts.

19   Q. How do you know that?

20   A.  Because they were the -- you know, for CSC, somebody, either me

21   or somebody on my team, would manage it, but when the change was

22   made -- because Jeanette used to manage CSC's accounts, too, before.

23   Apex accounts were not turned over to me or my department.  They

24   continued to manage it.

25   Leitch Decl., ¶ 29, Ex. BB, Kumar Dep., tr. 247:17-248:2.

26   Q.  Did you say that Jack and Jeanette retained control over the Apex

27

28                                    19

1    administrative part of the Apex E-mail system?

2        A.   Yes, I did.

3        Q.   Up until the time they left?

4        A.   Yes, they did.

5    *Id.*, tr. 262:13-18.  Mr. Kumar further testified that "Mr. Dahl was the administrator

6    and he administered all of Apex's E-mails.  He controlled the username, passwords .

7    . .."  *Id.*, tr. 245:17-19.

8        Mr. Kumar testified that not only did Dahl and Johnson have authorization to

9    oversee the email accounts, as the administrators, it was their job to do so.  Thus,

10   even if Plaintiffs come forward with evidence to prove the other elements of this

11   claim, they cannot prove the actions of Dahl or Johnson were not authorized.

12   Plaintiffs therefore cannot prove this cause of action against Dahl or Johnson.

13       Plaintiffs also cannot prove this cause of action because, even assuming

14   *arguendo* that Dahl or Johnson accessed the facility without authorization,

15   Plaintiffs cannot meet their burden to prove which of Dahl or Johnson did so.

16   **IX.   APEX CANNOT PROVE ITS NINTH CAUSE OF ACTION FOR**

17          **UNFAIR COMPETITION.**

18       Plaintiffs have alleged a cause of action against Dahl and Johnson for unfair

19   competition in violation of California's Business & Professional Code section

20   17200 (hereafter "the UCL").  Liability under the UCL generally is derivative of

21   liability for violation of some other law.  *Taguinod v. World Savings Bank, FSB*,

22   755 F. Supp. 2d 1064, 1074 (C.D. Cal. 2010).  Where liability cannot be established

23   on the other law, there cannot be liability on the UCL claim.  *Id.  See also Rivera v.*

24   *BAC Home Loans Servicing, L.P.*, 756 F. Supp. 2d 1193, 1200-01 (N.D. Cal. 2010).

25       The preceding sections of this Memorandum, and the Populous

26   Memorandum incorporated herein, establish that Plaintiffs cannot prove any of the

27

28

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

20

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary
Judgment

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

1  causes of action they allege against Dahl or Johnson.  For the same reasons

2  Plaintiffs cannot establish those causes of action, they cannot establish their cause

3  of action for violation of the UCL.

4  **X.   PLAINTIFFS' FIRST, SECOND, FOURTH, AND NINTH CAUSES OF**

5  **ACTION ARE PREEMPTED TO THE EXTENT THEY ARE BASED**

6  **ON THE ALLEGED USE OR DISPOSITION OF TRADE SECRETS.**

7  Plaintiffs claim Dahl and Johnson took and used Plaintiffs' confidential and

8  proprietary information, provided it to HOK, and used it to compete with Plaintiffs.

9  *See, e.g.,* Ptfs.' Doc. #27, Ptfs.' SAC, 2:18-26.  After more than three years of

10  litigation, it remains unclear what "confidential and proprietary" information Dahl

11  and Johnson are alleged to have taken or used, but to the extent any of that

12  information qualifies as a trade secret, Apex's First, Second, Fourth, and Ninth

13  causes of action are preempted by California's Uniform Trade Secrets Act, ("the

14  CUTSA"), to the extent they are based on that information.  *See K.C. Multimedia,*

15  *Inc. v. Bank of America Technology & Operations, Inc.*, 171 Cal. App. 4th 939,

16  958-59 (2009).  The CUTSA preempts all common law causes of action that are

17  based on the same nucleus of facts as a cause of action for misappropriation of trade

18  secrets.  *Id.*, citing Cal. Civ. Code § 3426.7 and *Digital Envoy, Inc. v. Google, Inc.*

19  370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005).

20  At such point as Plaintiffs disclose exactly what "confidential and

21  proprietary" information it contends Dahl or Johnson took, Johnson and the Court

22  will be able properly to assess the extent to which Apex's Second, Fifth, and Ninth

23  causes of action are preempted by the CUTSA.

24

25

26

27

28

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary
Judgment

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

## XI.    JOHNSON IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE LOST FUTURE PROFITS APEX SEEKS ARE TOO SPECULATIVE.

Plaintiffs' claim damages of lost future profits for periods of five and six years after the alleged events on which its claims are based.  *See* Leitch Decl. ¶ 25, Ex. X,  Ptfs.' Second Supp. Resp. to Populous's Ints., No. 12, pp. 2 – 3.  To recover lost future profits, Plaintiffs must prove **with reasonable certainty** (i) that the events that would lead to the profits would have occurred, and (ii) the amounts of the losses.  *Kids' Universe v. In2Labs*, 95 Cal. App. 4th 870, 883-84 (2002).  Plaintiffs cannot prove either with reasonable certainty.

As shown above, the relationships Apex had with the NFL and NCAA Final Fours were based solely on Dahl and Johnson being with Apex.[14]  Dahl and Johnson left voluntarily before any of the events from which Plaintiffs claim they would have received profits.  SUF  ¶¶ 1 and 5.  As a result, the NFL and NCAA left as well.  The PGA and Yucaipa stopped using Apex for reasons having nothing to do with Dahl and Johnson.  Thus, Plaintiffs cannot prove the events necessary for those profits from any of those former clients to have been earned would have occurred.

As discussed above regarding the NCAA Bowl Games, Apex's Other Credentialing, and Other Apex Divisions, Plaintiffs have not disclosed information about these damage claims such that Johnson could understand or respond to them, including what clients they involve, what allegedly caused the damages, or under what cause of action Plaintiffs seek to recover them.

Apex also cannot offer any basis that would establish with reasonable

---

[14] Johnson remains unaware of what relationships <u>CSC</u> claims to have had and thus cannot address its claims or damages.

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary Judgment

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

certainty that it would have earned five and six years of profits from the former clients at issue (at least those it actually has identified; Populous obviously cannot address any basis for the NCAA Bowl Games, Other Credentialing, Adventous, and Other Apex Divisions because Apex has not provided any information about them). Apex claims in those respects are pure speculation, particularly given that its contracts with each of these entities was at most one year in duration. *See* SUF ¶ 99. (NFL contract one year); SUF ¶ 71 (no contract for NCAA Final Fours); Leitch Decl. ¶ 20, Ex. S (PGA contract one year, *see* p. 2, ¶ 7); and Leitch Decl. ¶¶ 21-22, Exs. T and U (Yucaipa contracts were six months – *see* ¶ 6 in each contract).

## XII.   JOHNSON IS NOT LIABLE AS THE SUCCESSOR-IN-INTEREST TO DAHL.

Plaintiffs cannot establish Johnson's liability as a successor-in-interest to Johnson because it cannot establish any liability of Dahl on any of its causes of action against him.

And while asserting causes of action against Does 1 through 20 (*see* Doc. #27, Ptfs.' SAC, Tenth Cause of Action, p. 29), Plaintiffs have not taken any steps to identify those Does or to determine what assets of Dahl they may have received on his death. Plaintiffs thus cannot establish to what extent Johnson would be liable for any act of Dahl, even if Plaintiffs could establish liability.

## XIII.   CONCLUSION

For the reasons set forth in Johnson's Motion for Summary Judgment, the foregoing Memorandum of Points and Authorities, Populous's Memorandum, Johnson's Statement of Uncontroverted Facts and Conclusions of Law, declarations in support of this Motion, and all additional arguments authorities presented during any hearing on this Motion or otherwise, Johnson moves the Court to enter judgment in her favor on all claims and causes of action asserted against her by

Rutan & Tucker, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931

1  Plaintiffs Executive Security Management, dba The Apex Group, and by

2  Contemporary Services Corporation, award her all costs and attorneys' fees

3  incurred herein in defending against those claims, and award her such further and

4  additional relief as is appropriate and reasonable.

5

6  Dated:  August 5, 2011                    RUTAN & TUCKER, LLP

7                                            By:/s/Milford W. Dahl, Jr.

8                                               Milford W. Dahl, Jr.
                                                Attorneys for Defendant
9                                               Jeanette Johnson, individually and
                                                as successor in interest to Jack Dahl
10

11                          **CERTIFICATE OF SERVICE**

12       I hereby certify certify that on August 5, 2011, I filed Defendant Jeanette

13  Johnson's Notice of Motion and Motion for Summary Judgment with the Court's

14  ECF system, which is designed to serve all counsel of record herein, which would

15  include:

16

17  Ronald L. Richman
    Bullivant Houser Bailey PC
18  601 California Street, Suite 1800
19  San Francisco, California  94108
    Telephone: 415.352.2700
20  Facsimile: 415.352.2701

21

22  Renee E. Rothauge, Esq.
    Markowitz Herbold Glade & Mehlhaf PC
23  1211 SW 5th Avenue, Suite 3000
24  Portland, OR  97204-3730
    Telephone:  503-295-3085
25  Facsimile:  503-323-9105

26

27

28                                    24
    _____
    Defendant Jeanette Johnson's Notice of Motion and Motion For Summary
                              Judgment

1

Attorneys for Plaintiffs
EXECUTIVE SECURITY MANAGEMENT, INC.,

2

dba THE APEX GROUP and

3

CONTEMPORARY SERVICES CORPORATION

4

and

5

6

J. Bradley Leitch

7

Brian W. Fields

8

LATHROP & GAGE LLP
2345 Grand Boulevard, Suite 2200

9

Kansas City, MO  64108-2618
Telephone:  (816) 292-2000

10

Facsimile:  (816) 292-2001

11

Attorneys for Defendants Populous

12

Holdings, Inc. and HOK Group, Inc.

13

/s/ Mildord W. Dahl, Jr.
Milford W. Dahl, Jr.

14

Attorney for Defendant
Jeanette Johnson, individually and as

15

successor-in-interest to Jack Dahl

16

17

18

19

20

21

22

23

24

25

26

27

28

**Rutan & Tucker, LLP**
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California  92626-1931

25

Defendant Jeanette Johnson's Notice of Motion and Motion For Summary
Judgment

16880219v6