UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-9273 CAS (JEMx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | EXECUTIVE SECURITY MANAGEMENT, INC. ET AL. v. JACK DAHL ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| RITA SANCHEZ | N/A | | N/A |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| N/A | | N/A | |

**Proceedings:**   (In Chambers:) CROSS-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (filed 8/4/2011)

**I.   INTRODUCTION**

On April 9, 2008, plaintiffs Executive Security Management, Inc., d/b/a The APEX Group ("Apex"), and Contemporary Services Corporation ("CSC") filed the instant action in Los Angeles County Superior Court. With leave of court, plaintiffs filed a first amended complaint ("FAC") on November 11, 2009, against Jack Dahl ("Dahl"); Jeanette Johnson, in her individual capacity and as successor in interest to Dahl ("Johnson"); Populous Holdings, Inc., formerly known as HOK Sport Venue Event ("Populous"); HOK Group, Inc. ("HOK Group"); Juan Melendez ("Melendez"); and Yvette Rocha ("Rocha"). On December 17, 2009, Populous timely removed the instant action to this Court. On February 8, 2010, the Court granted in part and denied in part defendants' motion to dismiss the FAC.

On March 10, 2010, plaintiffs filed a Second Amended Complaint ("SAC") against all defendants except Melendez and Rocha who were not named as defendants. Plaintiffs' SAC alleges the following claims: (1) breach of fiduciary duty against Dahl and Johnson; (2) conversion against all defendants; (3) intentional interference with contract against all defendants; (4) intentional interference with prospective economic advantage against Dahl and Johnson; (5) intentional interference with prospective economic advantage against Populous and HOK Group; (6) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq. ("CFAA"), against Dahl and Johnson; (7) interception of communications in violation of the Wiretap Act, 18 U.S.C. § 2510 et

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-9273 CAS (JEMx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | EXECUTIVE SECURITY MANAGEMENT, INC. ET AL. v. JACK DAHL ET AL. | | |

seq., against Dahl and Johnson; (8) unlawful access to stored communications in violation of the Electronic Communications Privacy Act ("ECPA"), pursuant to 18 U.S.C. § 2707, against Dhal and Johnson; (9) unfair competition in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL") against all defendants; and (10) successor liability against Johnson.

      On February 9, 2011, the Court signed the order on the parties' stipulation to permit the filing of the cross-complaint in this in this action which asserts claims against Apex, CSC, Apex and CSC's chief executive officer and majority owner Damon Zumwalt ("Zumwalt"), CSC's chief financial officer Keith Granier ("Granier"), CSC's senior VP of administration Jim Granger ("Granger"), regional manager and VP of operations of CSC Mark Glaser ("Glaser"), part-time Apex employee Gerald Trueman ("Trueman"), Apex's VP of operations Robert Brockway ("Brockway"), Apex and CSC's website administrator Abraham Kumar ("Kumar"), and CSC's VP of special events Dan Sidders ("Sidders"). Defendants' cross-complaint alleges the following claims: (1) intentional infliction of emotional distress ("IIED") by Dahl against all cross-defendants; (2) IIED by Johnson against all cross-defendants; (3) misappropriation of name pursuant to Cal. Civ. Code § 3344 by Dahl against all cross-defendants; (4) misappropriation of name pursuant to Cal. Civ. Code § 3344 by Johnson against all cross-defendants; (5) failure to produce corporate records pursuant to Corp. Code §§ 1601(a) and 1603(a) by Dahl against Apex, CSC, Zumwalt, and Granier; (6) failure to pay wages upon termination in violation of Cal. Lab. Code § 201 by Dahl against Apex and Zumwalt; (7) failure to pay overtime wages in violation of Cal. Lab. Code § 510 by Johnson against CSC and Zumwalt; (8) failure to provide itemized wage statements in violation of Cal. Lab. Code § 226 by Johnson against CSC and Zumwalt; (9) failure to provide payroll records in violation of Cal. Lab. Code § 226 by Johnson against CSC and Zumwalt; (10) failure to provide payroll records in violation of Cal. Lab. Code § 226 by Johnson against Apex and Zumwalt; (11) failure to provide inspection of personnel records in violation of Cal. Lab. Code § 1198.5 by Johnson against CSC and Zumwalt; (12) failure to provide inspection of personnel records in violation of Cal. Lab. Code § 1198.5 by Johnson against Apex and Zumwalt; (13) failure to reimburse expenses in violation of Cal. Lab. Code § 2802 by Johnson against CSC and Zumwalt; (14) failure to reimburse expenses in violation of Cal. Lab. Code § 2802 by Johnson against Apex and Zumwalt; and (15) breach of fiduciary duty against Zumwalt and Brockway.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-9273 CAS (JEMx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | EXECUTIVE SECURITY MANAGEMENT, INC. ET AL. v. JACK DAHL ET AL. | | |

On August 1, 2011, the parties entered into a stipulation whereby the cross-complainants dismissed the following claims: Dahl and Johnson dismissed their alter-ego claims against Zumwalt; Dahl dismissed his first claim for IIED against all cross-defendants; Dahl and Johnson dismissed their third and fourth claims for misappropriation of name against Zumwalt; Dahl dismissed his fifth claim for production of corporate records against all cross-defendants; Dahl dismissed his sixth claim for production of records against Zumwalt; Johnson dismissed her seventh claim for failure to pay overtime wages against Zumwalt; Johnson dismissed her eighth claim for failure to provide itemized wage statements against Zumwalt; Dahl and Johnson dismissed their ninth and tenth claims for failure to provide payroll records against Zumwalt; Dahl and Johnson dismissed their eleventh and twelfth claims for violation of Cal. Lab. Code § 1198.5 against all cross-defendants; and Dahl and Johnson dismissed their thirteenth and fourteenth claims for failure to reimburse expenses against Zumwalt.

On August 4, 2011, cross-defendants filed a motion for summary judgment as to the second, third, fourth, seventh, eighth, thirteenth, fourteenth, and fifteenth claims. Cross-complainants opposed the motion on September 23, 2011, and cross-defendants replied on October 6, 2011. After carefully considering the arguments set forth by both parties, the Court finds and concludes as follows.

## II. BACKGROUND

Apex is a corporation that provides executive security, event security, and event accreditation services at concerts and sporting events. Cross Compl. ("CC") ¶ 20. CSC is a corporation that provides event staffing, security, and crowd management for concerts and sporting events. Id. ¶ 21. Cross-complainants Dahl and Johnson, husband and wife, are former employees of Apex and CSC, respectively. Id. ¶¶ 17–18. The gravamen of cross-complainants' dispute is that "[o]ver the course of their employment Dahl and Johnson were the recipients of calculated, intentional, malicious, and abusive misconduct engaged in by APEX, CSC and their majority owner and chief executive officer, Damon Zumwalt." Id. ¶ 1. According to cross-complainants, on January 27, 2008, Zumwalt attempted to enter the credentialing office at the Super Bowl even though he had not been properly credentialed. Id. ¶ 22. The NFL officials allegedly prohibited Zumwalt from entering the offices without being accompanied by NFL officials. Id. This allegedly enraged Zumwalt, who threatened to fire Dahl and another Apex employee

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-9273 CAS (JEMx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | EXECUTIVE SECURITY MANAGEMENT, INC. ET AL. v. JACK DAHL ET AL. | | |

and yelled that he was "going to shut the [expletive]-ing place down." Id. According to cross-complainants, Zumwalt "angrily exited" the premises and thereafter filed and served the complaint in this action. Id. Moreover, cross-complainants aver that Zumwalt also made numerous misrepresentations to the NFL employees, including "defamatory accusations and statements that cross-complainants had stolen money, stole a company computer, stole company files, stole confidential and proprietary information, were incompetent, were planning on starting their own business, and were working for competitors." Id. ¶ 23. These statements, according to cross-complainants, were made "with the express intent of damaging cross-complainants and inflicting substantial financial and emotional distress upon them." Id. Both Johnson and Dahl were allegedly suspended on February 4, 2008. Id. ¶¶ 24. Johnson resigned that same day, and Dahl was "constructively terminated" on February 11, 2008.

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-9273 CAS (JEMx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | EXECUTIVE SECURITY MANAGEMENT, INC. ET AL. v. JACK DAHL ET AL. | | |

of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. CROSS-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Cross-defendants have moved for summary judgment on cross-complainants' second, third, fourth, seventh, eighth, thirteenth, fourteenth, and fifteenth claims. Each claim is discussed in turn.

### A. Second Claim for Intentional Infliction of Emotional Distress by Johnson Against All Cross-Defendants

To recover for IIED, a plaintiff must show: "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and proximate causation of the emotional distress." McDaniel v. Gile, 230 Cal. App. 3d 363, 372 (Cal. Ct. App. 1991) (quoting Agarwal v. Johnson, 25 Cal. 3d 932, 946 (1979)).

Johnson alleges a litany of acts committed by cross-defendants as a basis for her IIED claim. See CC ¶¶ 31–35. These include, inter alia, falsifying allegations against Johnson, defaming her to third parties by accusing her of theft, failing to pay Johnson money she was owed, treating Johnson differently after she was diagnosed with breast cancer, cursing and yelling and banging his fists in the office, emailing inappropriate jokes, failing to keep the building up to code, discriminating against female employees, and requiring Johnson to work up to 70 hours per week. Id. ¶ 32(a), (c), (j), (s), (u), (aa), (cc), (gg). Johnson alleges that cross-defendants engaged in these actions "knowing that Johnson was particularly vulnerable to emotional distress due to her cancerous condition and the life threatening cancerous condition of her husband Dahl." Id. ¶ 33.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-9273 CAS (JEMx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | EXECUTIVE SECURITY MANAGEMENT, INC. ET AL. v. JACK DAHL ET AL. | | |

Cross-defendants move for summary judgment on Johnson's IIED claim under the "law of the case" doctrine. Mot. at 3 (citing Thomas v. Bible, 983 F.2d 152, 154 (9th Cir. 1993)). Cross-defendants argue that "Superior Court Judge Jerry Fields dismissed most of the allegations" from Johnson's IIED claim "without leave to amend," leaving only the allegations contained in paragraph 32(a). Id. Paragraph 32(a) alleges:

> When the NFL refused Zumwalt and [Apex employee Oatess] Archey access to the security office at the Super Bowl, Zumwalt and Archey in addition to making loud threatening comments in the presence of NFL officials and others, as alleged in paragraph 23, determined to falsify allegations against Dahl and his wife Johnson and purported to initiate investigations against Dahl and Johnson and using said purported investigation undertook to defame, threaten and harm Dahl and Johnson.

CC ¶ 32(a).

Cross-defendants contend that Judge Fields' ruling is the "law of the case" and that this Court should preclude Johnson from now relying on any of the dismissed allegations. Id. at 3–4. Cross-defendants further argue that Johnson's therapist's testimony establishes that Johnson's emotional distress stems from her medical issues, anticipatory grief associated with the likely loss of Dahl, grief associated with the death of Dahl, and stress caused by this lawsuit. Id. at 4. Cross-defendants argue that they had "nothing to do" with the first three causes of Johnson's emotional distress and that they are immune from IIED liability based on the act of filing suit against Johnson. Id. Finally, cross-defendants contend that there is no evidence that they engaged in the conduct alleged in Johnson's IIED claim. Id. at 5.

Johnson responds that although Judge Fields granted the motion to strike as to "certain specific allegations of misconduct," the claim itself was not stricken. Opp'n at 1. Moreover, Johnson contends that Judge Fields ruling was not a "final ruling" under California law and therefore the law of the case doctrine does not apply. Id. at 3. Finally, Johnson argues at length why Judge Fields was in error striking specific allegations because, according to Johnson, an IIED claim may be supported by the totality of the circumstances. Id. at 4–11.

In reply, cross-defendants argue that Judge Fields struck the allegations contained

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-9273 CAS (JEMx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | EXECUTIVE SECURITY MANAGEMENT, INC. ET AL. v. JACK DAHL ET AL. | | |

in paragraph 32(b)–(ii) because those allegations do not support a claim for IIED. Reply at 3. Cross-defendants maintain that Judge Fields did not err in striking those allegations. Id. at 5–7. Further, cross-defendants contend that Johnson was not present during the incident alleged in paragraph 32(a), rendering her IIED claim wholly unviable. Id. at 7.

The Court finds that there is a triable issue as to whether Zumwalt's behavior toward Johnson amounts to IIED.[1] Although many of the individual claims asserted in the cross-complaint are not "extreme and outrageous" taken in a vacuum, the law is not so formulaic. "The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." McDaniel, 230 Cal. App. 3d at 372 (internal quotation marks and citation omitted). "Although it may be that mere insulting language, without more, ordinarily would not constitute extreme outrage," any "aggravated circumstances" must be taken into account when determining whether an IIED claim should proceed. Alcorn v. Anbro Eng'g, Inc., 2 Cal. 3d 493, 499 (1970). Here, Zumwalt knew that both Dahl and Johnson were suffering from potentially life-threatening cancer and thus knew they were "peculiarly susceptible to emotional distress." Nonetheless, he allegedly insulted, harassed, humiliated, and intimidated Johnson in the workplace to the point where she felt obligated to work from home. CC ¶ 32(u). Moreover, Johnson avers that Zumwalt became angry when CSC's insurance premiums increased due to Johnson's cancer treatments and allegedly complained to others that she and Dahl were a drain on "his money." Id. ¶ 32(ee). Johnson also alleges that Zumwalt and CSC's chief financial officer Granier forced her to lie about CSC's

---

[1] The Court declines to apply the law of the case doctrine here. "The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs." United States v. Lummi Indian Tribe, 235 F.3d 443, 452 (9th Cir. 1991) (quoting Milgard Tempering, Inc. v. Selas Corp. of Am., 902 F.2d 703, 715 (9th Cir. 1990)). Application of the doctrine is discretionary. Lummi, 235 F.3d at 452. The Los Angeles Superior Court's two-page order dismissing most of Johnson's allegations regarding her IIED claim simply states that the allegations are "unnecessary" or "not outrageous" to give rise to IIED liability, but does not set forth reasons in support of the ruling. See Supp. RJN, Exh. 4 at 1–2. The Court finds it is prudent not to apply the law of the case doctrine under these circumstances.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-9273 CAS (JEMx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | EXECUTIVE SECURITY MANAGEMENT, INC. ET AL. v. JACK DAHL ET AL. | | |

business prospects which exacerbated the stress caused by her cancer treatments. Id. ¶ 32(ff). A rational jury could find that Zumwalt's actions amounted to "extreme and outrageous conduct" based on the totality of the circumstances, including Johnson and Dahl's life-threatening illnesses. E.g., Rulon-Miller v. Int'l Bus. Mach., Corp., 162 Cal. App. 3d 241, 255 (Cal. Ct. App. 1984) overruled on other grounds by Foley v. Interactive Data Corp., 47 Cal. 3d 654, 714 (1988) (upholding jury verdict finding defendant liable for IIED based on a "combination of statements and conduct"); see also McDaniel, 230 Cal. App. 3d at 372 (noting that behavior may be considered outrageous if a defendant "abuses a relation or position which gives him power to damage the plaintiff's interest").[2]

Accordingly, cross-defendants' motion for summary judgment is DENIED as to cross-complainants' second claim.

**B. Third and Fourth Claims by Dahl and Johnson for Misappropriation of Name For Advertising or Selling or Soliciting Pursuant to Cal. Civ. Code § 3344**[3]

Cal. Civ. Code § 3344 states in part: "Any person who knowingly uses another's name, voice, signature, photograph, or likeness . . . without prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof." Cal. Civ. Code § 3344. A plaintiff must establish a direct connection between the alleged use and the commercial purpose. Downing v. Abercrombie & Fitch, 265 F.3d 994, 1001 (9th Cir. 2001).

---

[2]Contrary to cross-complainants' assertion, the testimony of Johnson's therapist Ellen Bradley-Windell does not conclusively establish the "causes" of Johnson's emotional distress. Bradley-Windell testified that her role as a therapist is "the process of the therapy" and "not so much [the] content" of why Johnson has experienced emotional distress. See Declaration of Renee E. Rothauge ("Rothauge Decl.") ¶ 3, Exh. 1-H (Bradley-Windell deposition). Whether or not Zumwalt's actions caused Johnson to suffer emotional distress is more properly a question for the jury.

[3]Cross-plaintiffs have dismissed this claim against Zumwalt but retain it against all other cross defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-9273 CAS (JEMx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | EXECUTIVE SECURITY MANAGEMENT, INC. ET AL. v. JACK DAHL ET AL. | | |

Cross-complainants aver that after Dahl and Johnson left Apex, Apex continued to use Dahl and Johnson's names on Apex's website in violation of Cal. Civ. Code § 3344. CC ¶¶ 37, 42. Cross-complainants contend they are entitled to punitive damages because cross-defendants acted "with ill will and malice." Id. ¶¶ 40, 45.

Cross-defendants move for summary judgment on this claim on the ground that cross-claimants cannot show that the use of Dahl and Johnson's name on Apex's website was "knowing." Mot. at 6 (citing Polydoros v. Twentieth Century Fox Film Corp., 67 Cal. App. 4th 318, 322 (Cal. Ct. App. 1997)). According to cross-defendants, "there is simply no evidence that the failure to remove Dahl and Johnson's names from the APEX website was anything but an innocent mistake." Id. at 6–7.

Cross-complainants respond that Apex's alleged "mistake" in maintaining Johnson and Dahl's names on its website is belied by the fact that the names remained on the website for at least 85 days, "despite two written demands that they be removed." Opp'n at 15. Specifically, cross-complainants assert that their counsel sent a letter on February 28, 2008, and another on March 5, 2008, demanding Dahl and Johnson's names be removed, but that Apex left their names on its website until "sometime after April 30," 2008, at least seven weeks later. Id.

In reply, cross-defendants argue that not only must cross-claimants prove a "knowing" use, but they must also show that the use was "without prior consent." Reply at 11. Cross-defendants contend that "Johnson and Dahl failed to prove that the names and photographs were placed onto the company website without their prior consent." Id. at 12.

The Court finds that there is a triable issue of fact as to whether cross-defendants knowingly maintained Dahl and Johnson's photographs and biographies on the company's website without their prior consent. It is undisputed that cross-complainants sent one email on February 28, 2008, and another on March 5, 2008, demanding Apex remove references to Dahl and Johnson from its website because maintaining their names and profiles "is untrue, misleading and can cause confusion to customers and others in the business." Declaration of Jeanette Johnson ("Johnson Decl.") ¶ 16, Exh. 7 (February 28, 2008 email from cross-complainants' counsel Mark Payne to Apex); Declaration of Milford W. Dahl, Jr. ("Dahl Decl.") ¶ 6, Exh. 8 (March 5, 2008 email from cross-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-9273 CAS (JEMx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | EXECUTIVE SECURITY MANAGEMENT, INC. ET AL. v. JACK DAHL ET AL. | | |

complainants' counsel Milford Dahl to Apex). Cross-complainants have offered printouts of Apex's website from February 28, 2008 depicting Dahl's full biography and Johnson's name listed under CSC's "Management" team, and another printout from the same website on April 30, 2008, depicting Johnson's name and contact information as the contact person for the site. Johnson Decl., ¶ 16, Exhs. 6, 9. Whether or not CSC and Apex "knowingly use[d]" Dahl and Johnson's name for commercial purposes in violation of Cal. Civ. Code § 3344 is a question for the jury. Downing v. Abercrombie & Fitch, 265 F.3d at 1001; Matsushita, 475 U.S. at 587 ("[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.").[4]

Accordingly, cross-defendants' motion is DENIED as to cross-complainants' third and fourth claims.

**C. Seventh Claim for Failure to Pay Overtime Wages in Violation of Cal. Lab. Code § 510 and Eighth Claim for Failure to Provide Itemized Wage Statements in Violation of Cal. Lab. Code § 226 by Johnson Against CSC**

Cal. Lab. Code § 510 provides that "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." Cal. Lab. Code § 510. Cal. Lab. Code § 226 requires employers to furnish each employee with an accurate itemized statement in writing showing, among other things, total wages earned and total hours worked. Cal. Lab. Code § 226(a). The California Industrial Welfare Commission ("IWC"), however, has the power to establish exemptions from paying for overtime and furnishing itemized wage statements for certain employees. See Cal. Lab. Code § 515(a). Specifically, the IWC exempts "persons employed in administrative, executive, or professional capacities." Combs v. Skyriver Commc'ns, Inc., 159 Cal. App. 4th 1242, 1253–54 (Cal. Ct. App. 2008).

---

[4]Moreover, to the extent Dahl and Johnson gave "prior consent" to use their names, such consent was obviously revoked either when Dahl and Johnson resigned from their employment or when their counsel sent letters demanding their names be removed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-9273 CAS (JEMx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | EXECUTIVE SECURITY MANAGEMENT, INC. ET AL. v. JACK DAHL ET AL. | | |

Johnson alleges that she is entitled to overtime wages pursuant to Cal. Lab. Code § 510 because she worked "at least 10 to 12 hours each day, often with no days off" during her last four years at CSC. CC ¶ 64. Johnson alleges she is not an exempt employee because she "did not have any decision making capabilities" and her duties "did not involve management or professional exempt duties." Id. ¶¶ 62, 63. Johnson further avers that CSC "failed to provide Johnson with an itemized wage statement with each payment of wages" as required by Cal. Lab. Code § 226. CC ¶ 71. Thus, according to Johnson, she was "unable to determine the extent of cross-defendants' failure" to pay the wages she is allegedly due. Id.

Cross-defendants move for summary judgment on the seventh and eighth claims because "Johnson was, at all times, an exempt employee" under California law and therefore falls outside the ambit of either § 510 or § 226 coverage. Mot. at 7. Cross-defendants contend she meets the definition of an administrative employee or an executive employee. Id. at 8, 11. According to cross-defendants, Johnson was not required to keep track of her hours (other than for purposes of billing clients) and was listed on CSC's website as a part of the CSC Management team. Reply at 14.

Cross-claimants respond that "[e]xcept during certain events, . . . [Johnson] did not exercise or have any managerial duties over any other employees." Opp'n at 16. They argue that she "did not have the authority to formulate, effect, interpret, or implement management policies or operating practices." Id. at 17. Cross-complainants contend that whether or not Johnson is an exempt employee is a mixed question of law and fact, unsuitable for summary adjudication. Id. at 17–18.

The Court finds that summary judgment is warranted in favor of cross-defendants because Johnson meets the definition of an "administrative" employee under Cal. Lab. Code § 515. Cal. Code Regs., tit. 8, § 11040(1)(A)(2) defines "Administrative Exemption":

> (2) Administrative Exemption. A person employed in an administrative capacity means any employee:
>
> (a) Whose duties and responsibilities involve either:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-9273 CAS (JEMx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | EXECUTIVE SECURITY MANAGEMENT, INC. ET AL. v. JACK DAHL ET AL. | | |

> (I) The performance of office or non-manual work directly related to management policies or general business operations of his/her employer or his employer's customers;
>
> . . . .
>
> (b) Who customarily and regularly exercises discretion and independent judgment; and
>
> . . . .
>
> (e) Who executes under only general supervision special assignments and tasks; and
>
> (f) Who is primarily engaged in duties that meet the test of the exemption . . . The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.
>
> (g) Such employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in California Labor Code Section 515(c) as 40 hours per week.

Cal. Code Regs., tit. 8, § 11040(1)(A)(2).

The IWC expressly incorporated a Fair Labor Standards Act regulation defining the phrase "directly related to the management or general business operations" from § 11040(1)(A)(2)(a)(I): "To meet this requirement an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). The administrative exemption includes advertising and marketing functions. Id.; Combs, 159 Cal. App. 4th at 1256. The term "primarily" means "more than one-half the employee's work time." Cal. Code

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-9273 CAS (JEMx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | EXECUTIVE SECURITY MANAGEMENT, INC. ET AL. v. JACK DAHL ET AL. | | |

Regs., tit. 8, § 11040(2)(N).

Here, the following facts regarding Johnson's employment at CSC are undisputed:

- Johnson does not know whether she is an exempt or nonexempt employee;
- Johnson was hired as a salaried employee and at all times her salary has been more than double minimum wage;
- Johnson was the operations manager for the Super Bowl contracts performed by Apex while she was employed at CSC;
- Johnson was the director of accreditation services provided to the PGA between 2001 and 2007;
- Johnson communicated directly with associate director of NCAA Women's Final Four championships Rick Nixon regarding credentialing work performed by Apex;
- Johnson represented herself as having project management skills during her employment with CSC;
- Johnson represented herself as a senior project manager for the Super Bowl accreditation contracts performed by Apex;
- Johnson was responsible for telling certain staff members what to do at Apex credentialing events while she was employed at CSC;
- Johnson was listed under "CSC Management" on Apex's website; and
- Johnson was not required to clock in and out of work and only tracked her hours insofar as to determine how much to bill clients.

Cross-defendants' SUF ¶¶ 6–12, 15–19, 21; Johnson Decl. ¶ 7.

Moreover, Populous' Jerry Anderson testified that he "didn't know what [Johnson's] title was, but certainly she was some type of project manager, seemingly a senior position." Supplemental Declaration of Ronald L. Richman ("Supp. Richman Decl."), ¶ 4 Exh. 2(a) at 208. Anderson personally witnessed Johnson "manag[e] processing people" and "direct[] them on what was going on" during the commission of Apex's credentialing contracts. Id. at 209; see also id. ("Q. And [Johnson was] acting as though she had the authority to order them about; is that right? A. Yes."). Additionally, Apex employee Bridgett Ott testified that Johnson was her "supervisor." Declaration of Ronald Richman ("Richman Decl."), ¶ 5, Exh. 3(d) at 23 ("Q. What . . . type [of]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-9273 CAS (JEMx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | EXECUTIVE SECURITY MANAGEMENT, INC. ET AL. v. JACK DAHL ET AL. | | |

interaction did you have with Jeanette Johnson at Super Bowl 2003? A. She would have been my supervisor. Q. And in the past as supervisor, did you have to report to Jeanette Johnson? A. I actually reported to Terry Dixon who reported to Jeanette Johnson."). California law draws "a distinction between administrative employees, who are usually described as employees performing work 'directly related to management policies or general business operations of his employer or his employer's customers,' . . . and production employees, who have been described as 'those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce.'" Eicher v. Advanced Bus. Integrators, Inc., 151 Cal. App. 4th 1363, 1372 (Cal. Ct. App. 2007) (internal citations omitted). In this case, the uncontroverted evidence establishes that Johnson worked in a position that necessarily required her to manage the employees and execution of Apex's credentialing contracts (such as the Super Bowl), and not simply to produce a good or service. See id. The Court therefore finds that Johnson falls within the "Administrative Exemption" to Cal. Code Regs., tit. 8, § 1040(1)(A)(2) and is not entitled to overtime payment or itemized wage statements pursuant to Cal. Lab. Code §§ 515 and 226.

Accordingly, cross-defendants' motion for summary judgment is GRANTED as to cross-claimants' seventh and eighth claims.

**D.   Thirteenth and Fourteenth Claims for Failure to Reimburse Expenses in Violation of Cal. Lab. Code § 2802 by Johnson and Dahl Against CSC and Apex**

Cal. Lab. Code § 2802 provides:

(a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

Cal. Lab. Code § 2802.

Cross-complainants allege that CSC and Apex have failed to reimburse their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-9273 CAS (JEMx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | EXECUTIVE SECURITY MANAGEMENT, INC. ET AL. v. JACK DAHL ET AL. | | |

expenses for the costs they have incurred as a result of the lawsuit cross-defendants' filed against Johnson and Dahl as required by Cal. Lab. Code § 2802. CC ¶¶ 91, 92.

Cross-defendants move for summary judgment on the thirteenth and fourteenth claims because, according to cross-defendants, Dahl and Johnson "are not entitled to indemnity for costs they incurred to defend themselves in this litigation" within the definition of Cal. Lab. Code §§ 2800, 2802. Mot. at 12. Cross-defendants argue that this lawsuit does not contain "third-party claims" and thus does not entitle cross-claimants to indemnity. Id. at 13.

Cross-claimants respond that there are third-party claims at issue: Johnson, a CSC employee, being sued by Apex, and Dahl, an Apex employee, being sued by CSC. Opp'n at 18. Furthermore, cross-claimants contend that cross-defendants owe Johnson and Dahl out-of-pocket expenditures paid during the 2008 Super Bowl. Id. at 19.

In reply, cross-defendants argue that indemnity applies only if the third-party lawsuit is "based on the employee's conduct within the scope of his or her job duties." Reply at 16 (citing Cassady v. Morgan, Lewis & Bockius LLP, 145 Cal. App. 4th 220, 224 (Cal. Ct. App. 2006)). Cross-defendants contend that neither Dahl nor Johnson's alleged tortious conduct at issue in cross-defendants' lawsuit falls outside the scope of their employment duties. Reply at 16. Moreover, cross-defendants assert that Johnson has presented no evidence of any unpaid expenses due to Johnson or Dahl, or that Johnson has incurred expenses related to this litigation because Populous is paying the defense costs. Id. at 17.

The Court finds that cross-defendants are entitled to summary judgment on cross-complainants' thirteenth and fourteenth claims. Section 2802 indemnification is required only if the third-party lawsuit is based on "the employee's conduct within the course and scope of his or her job duties." Cassady, 145 Cal. App. 4th at 224. Notwithstanding whether Apex and CSC are "third-parties" within the meaning of the statute, their lawsuit against Dahl and Johnson plainly relate to alleged conduct outside the scope of their duties, such as breach of fiduciary duty, intentional interference with prospective economic advantage, and violations of the Wiretap Act. Because "the employee has the burden to prove the conduct on which he or she was sued arose in the course and scope of the employment," Dahl and Johnson must prove that, for example, their alleged violations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-9273 CAS (JEMx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | EXECUTIVE SECURITY MANAGEMENT, INC. ET AL. v. JACK DAHL ET AL. | | |

of the Wiretap Act fell within the scope of their employment duties—evidence about which they have not, and likely cannot, produce. Id. at 224–25. Indemnification under these circumstances is obviously contrary to its legislative purpose of an employer protecting its employee from a third party lawsuit for conduct done on behalf of the employer and within the scope of the employee's duties. See, e.g., Jacobus v. Krambo Corp, 78 Cal. App. 4th 1096, 1101 (Cal. Ct. App. 2000) (noting that whether actions were committed "within the scope of employment" under § 2802 is akin to whether employers may be liable for an employee's actions under the doctrine of respondeat superior).

Accordingly, cross-defendants' motion for summary judgment is GRANTED as to cross-claimants' thirteenth and fourteenth claims.

### E. Fifteenth Claim for Breach of Fiduciary Duty by Dahl Against Zumwalt and Brockway

To establish a claim for breach of fiduciary duty, a plaintiff must prove: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) damage caused by the breach. Pellegrini v. Weiss, 165 Cal. App. 4th 515, 524 (Cal. Ct. App. 2008). The parties do not dispute that Zumwalt, as majority shareholder, owed Dahl, a minority shareholder, a fiduciary duty.

Dahl avers that Zumwalt, as Apex's majority shareholder, owed Dahl, as Apex's minority shareholder, a fiduciary duty. CC ¶ 110. According to Dahl, Zumwalt breached this fiduciary duty by "intentionally engaging in each and all of the acts alleged" in the cross-complaint. Id. ¶ 111.

Cross-defendants argue that summary judgment is warranted as to the fifteenth claim because Dahl suffered no injury to his interests as a minority shareholder. Mot. at 14. Cross-defendants further contend that to the extent Dahl asserts injury to the corporation, he cannot bring a direct action and must seek recovery through a derivative action. Id. at 14.

Cross-complainants assert that there was "never any intent" that this claim be a derivative claim because Dahl "is not suing nor seeks any damages for damage to the corporation." Opp'n at 19. Rather, cross-complainants contend that Dahl is suing "not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-9273 CAS (JEMx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | EXECUTIVE SECURITY MANAGEMENT, INC. ET AL. v. JACK DAHL ET AL. | | |

only in his capacity as a minority shareholder but as an employee," and that Zumwalt owed Dahl a duty "to make the employment payments" sought by Dahl. Id. at 20. Cross-complainants maintain that the Court cannot say as a matter of law that the transactions engaged in by Zumwalt were "fair, in good faith and equitable to Jack Dahl." Id.

Cross-defendants reply by arguing that IIED, misappropriation of name, failure to pay wages, and other claims alleged in the cross-complaint cannot form the basis of a breach of fiduciary claim, which requires Dahl to offer evidence that he suffered injuries to his interests as a minority shareholder. Reply at 17–18. According to cross-defendants, Dahl is "using the breach of fiduciary duty claim as an alternative legal theory to recover the damages alleged in his other claims," and that "he has offered no evidence that he suffered any damage as a minority shareholder." Id. at 20.

The Court finds that Dahl's allegations with respect to Zumwalt's wrongdoing cannot form the basis for a suit for breach of fiduciary duty by a minority shareholder against a majority shareholder. For example, the fact that Zumwalt allegedly misappropriated Dahl's name does not give rise to a cognizable injury to Dahl's interests as a minority shareholder in Apex. See, e.g., Jones v. H.F. Ahmanson & Co., 1 Cal. 3d 93, 106–07 (1969) (requiring injury to be related to interests as minority shareholder); Smith v. Tele-Comm'n, Inc., 134 Cal. App. 3d 338, 343 (Cal. Ct. App. 1982) (same). Accordingly, the Court GRANTS cross-defendants' motion for summary judgment as to the fifteenth claim.

**V.     CONCLUSION**

In accordance with the foregoing, cross-defendants' motion for summary judgment is GRANTED in part and DENIED in part. It is granted as to cross-claimants' seventh, eighth, thirteenth, fourteenth, and fifteenth claims. It is denied as to cross-claimants' second, third, and fourth claims.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | RS | | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-9273 CAS (JEMx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | EXECUTIVE SECURITY MANAGEMENT, INC. ET AL. v. JACK DAHL ET AL. | | |